UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JIMMY SHARBUTT,                        )
                                       )
                Plaintiff,             )
                                       )
        v.                             )    Civil Action No. 05-2396 JGP
                                       )
BUREAU OF ALCOHOL, TOBACCO, FIREARMS & )
EXPLOSIVES, et al.,                    )
                                       )
                Defendants.            )
                                       )
                                       )

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants[1], through counsel, respectfully move this Court for partial summary judgment

on the grounds that there are no material facts in genuine dispute and the defendants to which this

motion relates are entitled to judgment as a matter of law. Fed.R.Civ.P.56. In support of this

motion, defendants respectfully submit the attached Memorandum of Points and Authorities,

Statement of Material Facts not in Genuine Dispute, and declarations from (1) Leila I. Wassom,

Paralegal Specialist, Office of Chief Counsel, Administrative Law Section, Drug Enforcement

Administration; (2) Averill P. Graham, Chief, Disclosure Division, Bureau of Alcohol, Tobacco,

Firearms, and Explosives ; (3) William E. Bordley, Associate General Counsel and Freedom of

Information/Privacy Act ("FOI/PA") Officer of the United States Marshals Service; (4) Kathy

---

[1] The claims against the following components of the United States Department of
Justice; the Drug Enforcement Administration, the Federal Bureau of Investigation, the Bureau of
Alcohol, Tobacco, Firearms & Explosives, the United States Marshals Service, Criminal
Division Office of Enforcement Operations, the Federal Bureau of Prisons and the Internal
Revenue Service are addressed herein. The claim against the Executive Office of United States
Attorneys is not addressed herein but will be briefed in a later filing.

Hsu, Attorney, Criminal Division, United States Department of Justice, Office of Enforcement

Operations; (5) Karen Summers, Paralegal Specialist, the Federal Bureau of Prisons, South

Central Regional Office; (6) Heidi Peterson, Appeals Officer, Internal Revenue Service,

Riverside, California Appeals Office; and (7) David M. Hardy, Section Chief,

Record/Information Dissemination Section, Records Management Division, Federal Bureau of

Investigation.

      Plaintiff will please take notice that any factual assertions contained in the accompanying

declarations and other attachments in support of defendants' motion will be accepted by the

Court as true unless plaintiff controverts them with his own affidavit or other documentary

evidence. <u>See</u> <u>Neal v. Kelly</u>, 963 F.2d 453 (D.C.Cir., 1992), and Local Rule 7.1. As stated in

Fed.R.Civ.P.56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal
> knowledge, shall set forth such facts as would be admissible in
> evidence, and shall show affirmatively that the affiant is competent
> to testify to the matters stated therein. Sworn or certified copies of
> all papers or parts thereof referred to in an affidavit shall be
> attached thereto or served therewith. The court may permit
> affidavits to be supplemented or opposed by depositions, answers
> to interrogatories, or further affidavits. When a motion for
> summary judgment is made and supported as provided in this rule,
> an adverse party may not rest upon the mere allegations or denials
> of the adverse party's pleading, but the adverse party's response, by
> affidavits or as otherwise provided in this rule, must set forth
> specific facts showing that there is a genuine issue for trial. If the
> adverse party does not so respond, summary judgment, if
> appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Respectfully submitted,

KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

R. CRAIG LAWRENCE, D.C. BAR #171538
Assistant United States Attorney

WYNEVA JOHNSON, D.C. Bar #278515
Assistant United States Attorney

BRENDA C. WILLIAMS
Paralegal Specialist

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JIMMY SHARBUTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-2396 JGP |
| | ) |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS & | ) |
| EXPLOSIVES, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and concerns the processing of plaintiff's FOIA requests to the Drug Enforcement Administration ("DEA"), the Bureau of Alcohol, Tobacco, Firearms Explosives ("ATF"), the Federal Bureau of Investigation ("FBI"), the United States Marshals Service ("USMS"), the Department of Justice, Criminal Division, Office of Enforcement Operations, the United States Bureau of Prisons ("BOP") the Internal Revenue Service ("IRS"). All defendants have complied fully with the requirements of FOIA in responding to plaintiff's requests.

Specifically, defendants DEA, Department of Justice Criminal Division, Office of Enforcement Operations and IRS found no records. The Declarations of Leila I. Wassom, Paralegal Specialist, Office of Chief Counsel, Administrative Law Section, DEA Headquarters ("Wassom Decl.") Kathy Hsu, Attorney, Criminal Division, United States Department of Justice, Office of Enforcement Operations ("Hsu Decl"), and Heidi Peterson, Appeals Officer, Internal Revenue Service's ("Peterson Decl.") each describe the scope of their respective searches and the

bases of their findings of no responsive records.

Defendants ATF, USMS, FBI, and BOP found responsive records.  The Declarations of Averill P. Graham, Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and Explosives ("Graham Decl."), (2) William E. Bordley, Associate General Counsel and Freedom of Information/Privacy Act ("FOI/PA") Officer of the United States Marshals Service , ("Bordley Decl."), (3) David M. Hardy, Section Chief of the Record /Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. ("Hardy Decl."), and (4) Karen Summers, Paralegal Specialist, Federal Bureau of Prisons, South Central Regional Office, ("Summers Decl.") explain the scope of their respective searches and the appropriateness of the exemptions applied.  Each defendant released all non-exempt documents or portions thereof making every effort to provide plaintiff with all reasonably segregated portions of releasable material. Accordingly, plaintiff's claims against defendants ATF, USMS, BOP, FBI, DEA, Criminal Division, and IRS should be summarily dismissed.

## I. STATEMENT OF FACTS

Defendants incorporate herein as its Statement of Facts the Statement of Material Facts Not In Genuine Dispute attached hereto.

## II. ARGUMENT

### A.    Standard for Summary Judgment

In a FOIA/PA action, summary judgment is appropriate when, as here, the pleadings, together with the declarations, demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P.56(c);

Alyeska Pipeline Serv. Co. v. U.S. E.P.A., 856 F.2d 309, 313 (D.C.Cir. 1988) (conflict in

declarations alone insufficient to preclude entry of summary judgment); Weisberg v. U.S. Dept.

of Justice, 627 F.2d 365, 368 (D.C.Cir. 1980). The court exercises de novo review over FOIA

matters, and the burden is on the agency to justify all non-disclosures. 5 U.S.C. § 552(a)(4)(B);

U.S. Dept. of Justice v. Reporters Committee For Freedom of Press, 489 U.S. 749, 755 (1989).

In carrying its burden, agencies may rely on declarations of government officials which courts

normally accord a presumption of expertise in FOIA as long as the declarations are sufficiently

clear and detailed and submitted in good faith. Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68

(D.C.Cir. 1990); See Hayden v. National Sec. Agency/Central Sec. Service, 608 F.2d 1381, 1387

(D.C.Cir. 1979). Once the Court determines that the declarations are sufficient, it need not

inquire further. Students Against Genocide v. Department of State, 257 F.3d 828, 833 (D.C.Cir.

2001).

Because defendants here have released all non-exempt responsive documents on claims

challenged by the plaintiff, his Complaint here should be summarily dismissed.

## B.   **Defendants Have Submitted Proper "Vaughn" Indices**

In moving for summary judgment in a FOIA case, agencies must establish a proper basis

for their withholding of responsive documents. "In response to this special aspect of summary

judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their

motions for summary judgment against FOIA Plaintiffs." Judicial Watch, Inc. v. U.S. Dept. of

Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C., 1998). These declarations or

affidavits (singly or collectively) are often referred to as a Vaughn index, after the case of

Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564

(1974).  There is no set formula for a <u>Vaughn</u> index.  "[I]t is well established that the critical

elements of the <u>Vaughn</u> index lie in its function, and not in its form."  <u>Kay v. F.C.C.</u>, 976 F.Supp.

23, 35 (D.D.C., 1997).  "The materials provided by the agency may take any form so long as they

give the reviewing court a reasonable basis to evaluate the claim of privilege."  <u>Delaney, Midgail</u>

<u>& Young, Chartered v. I.R.S.</u>, 826 F.2d 124, 128 (D.C.Cir. 1987).  <u>See</u> <u>also</u> <u>Keys v. U.S. Dept. of</u>

<u>Justice</u>, 830 F.2d 337, 349 (D.C.Cir. 1987); <u>Hinton v. Department of Justice</u>, 844 F.2d 126, 129

(3rd Cir. 1988).[2]

     The <u>Vaughn</u> Index serves a threefold purpose: (1) it identifies each document withheld;

(2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage

the interests protected by the claimed exemption.  <u>See</u> <u>Citizens Com'n on Human Rights v. Food</u>

<u>and Drug Admin.</u>, 45 F.3d 1325, 1326 (9th Cir. 1995).  "Of course the explanation of the

exemption claim and the descriptions of withheld material need not be so detailed as to reveal

that which the agency wishes to conceal, but they must be sufficiently specific to permit a

reasoned judgment as to whether the material is actually exempt under FOIA."  <u>Founding Church</u>

<u>of Scientology of Washington, D.C., Inc. v. Bell</u>, 603 F.2d 945, 949 (D.C.Cir. 1979).

     Here, BOP, ATF, USMS and FBI have submitted supporting declarations and/or separate

<u>Vaughn</u> index in support of the exemptions taken.  Each agency declaration was prepared by an

individual familiar with the handling of the direct or referred request.

---

[2] "All that is required, and that is the least that is required, is that the requester and the
trial judge be able to derive from the index a clear explanation of why each document or portion
of a document withheld is putatively exempt from disclosure."  <u>Id</u>.  "The degree of specificity of
itemization, justification, and correlation required in a particular case will, however, depend on
the nature of the document at issue and the particular exemption asserted."  <u>Information</u>
<u>Acquisition Corp. v. Department of Justice</u>, 444 F.Supp. 458, 462 (D.D.C., 1978).

The declarations submitted in support of this motion meet the requirements of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564 (1974), and provide the Court with the requisite basis to grant Defendants' motion.

## C.    Defendants Conducted A Reasonable Search for Records

All defendants performed reasonable searches in response to plaintiff's FOIA request. In responding to a FOIA request an agency is under a duty to conduct no more than a reasonable search for responsive records. Ogelsby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Cleary, Gottlieb, Steen & Hamilton v. Department of Health and Human Services, 844 F.Supp. 770, 776 (D.D.C., 1993).

The search standards under the FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located. Nation Magazine, Washington Bureau v. U.S. Customs Service, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). It has been held that "the search need only be reasonable; it does not have to exhaustive." Miller v. U.S. Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985) citing, National Cable Television Ass'n, Inc. v. F.C.C., 479 F.2d 183, 186 (D.C.Cir. 1973). As a result, an agency under the FOIA is not required to search every division or field office in response to a FOIA request when responsive documents are likely to be located in one place. Marks v. U.S. (Dept. of Justice), 578 F.2d 261, 263 (9th Cir. 1978). The agency is not obligated to perform an "open-ended, broad based, and ill-defined" search of every division and office. See, Marrera v. U.S. Dept. of Justice, 622 F.Supp. 51, 54 (D.D.C., 1985).

Even when a requested document indisputable exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent. Nation Magazine, 71 F.3d at 892 n.7. Additionally, the mere fact that a document once

5

existed does not mean that it now exists; nor does the fact that an agency created a document

necessarily imply that the agency has retained it. Maynard v. C.I.A., 986 F.2d 547, (1st Cir.

1993). Simply stated, the adequacy of the search is "dependent upon the circumstances of the

case." Truitt v. Department of State, 897 F.2d 540, 542 (D.C. Cir. 1990).

## D.    DEA, Criminal Division and IRS Found No Responsive Documents

### 1. The DEA Conducted A Reasonable Search

By form letter dated April 19, 2005, the plaintiff requested records "in any way connected

to, related to, or even remotely in reference to my name." The plaintiff specifically requested

"all Criminal Investigatory & Forfeiture records compiled from the Tulsa & Oklahoma City, OK

area." DEA construed the request to be for criminal investigation records about the plaintiff.

The investigative information about the plaintiff was reasonably likely to be found in the DEA

Investigative Reporting and Filing System ("IRFS"), JUSTICE/DEA-008. The IRFS is a DEA

Privacy Act System of Records that contains all administrative, general and investigative files

compiled by DEA for law enforcement purposes. Wassom Decl. ¶ 14.

The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to

and the practical means by which DEA retrieves investigative reports and information from

IRFS.  Individuals are indexed and identified in NADDIS by their name, Social Security

Number, and/or date of birth.  As an index, NADDIS points to investigative files and particular

DEA Reports of Investigation (ROI), DEA Form-6 or other documents by date, that contain

information regarding a particular individual or subject of an investigation.  If any DEA criminal

investigation records exist that mention the plaintiff, NADDIS will have entries under the

plaintiff's name. Wassom Decl.¶16.

On June 28, 2005, a NADDIS search was conducted by SARO, in response to the plaintiff's request. The search was conducted by a SARO pre-processor, who used the plaintiff's name, Social Security Number, and date of birth, which the plaintiff provided in his request. The search of NADDIS found no records. On July 7, 2005, a search of the Federal Bureau of Investigation's National Crime Information Center (NCIC) database was conducted by a SARO Freedom of Information Specialist. Had the plaintiff been arrested by DEA law enforcement personnel, DEA would normally have forwarded a record to NCIC for inclusion in its system. See 28 CFR §§ 20.31-20.38. The search of NCIC found no reference to DEA records regarding the plaintiff. On December 30, 2005, subsequent to receipt of the Complaint, an additional search on NADDIS query, using an alternate Social Security Number found in the plaintiff's NCIC record. The search found no DEA records regarding the plaintiff. Wassom Decl. ¶ 17.

The plaintiff's request included a request for forfeiture records connected with his name. There is no indication that DEA searched its forfeiture records at the time the plaintiff made his initial FOIA request. On December 13, 2005, Ms. Wassom contacted Ms. Susan Ashcraft, Chief, Domestic Asset Forfeiture Section, DEA , who checked the Department of Justice's Consolidated Asset Tracking System (CATS), and found no asset forfeiture records regarding the plaintiff. Records in the DEA's Department are accessible. They are retrievable by the name of any individual or individuals who the agency believes may have an interest in the items seized. Wassom Decl. ¶ 18.

DEA undertook an adequate search in response to Plaintiff's FOIA Request and has met it's burden under the FOIA.

## 2. **The Criminal Division, Office of Enforcement Operations Conducted A Reasonable Search**

By letter dated April 19, 2005, plaintiff made a request to the Department of Justice, Criminal Division's FOIA/PA Unit for records concerning himself. Hsu Decl.¶ 4, attached as Exhibit 1. In processing requests from individuals seeking information on themselves, the Criminal Division begins by searching its centralized records index, JUSTICE/CRM-001 (Central Criminal Division Index File and Associated Records). When a search of this Central Index reflects responsive, or potentially responsive records, a search is sent to the section identified as having custody of the records for such records. Hsu Decl. ¶ 13.

In addition, the Criminal Division also affords requesters the opportunity to designate specific Privacy Act systems of records to be searched by means of a form listing the Division's systems of records and a short description of the nature of records maintained in each and allowing requesters to designate specific systems to be searched merely by placing a check mark adjacent to the system description. Here, the plaintiff requested that searches be undertaken of the following Privacy Act systems: JUSTICE/CRM-003 (File of Names Checked to Determine if Those Individuals have been the Subject of an Electronic Surveillance), JUSTICE/CRM-004 (General Litigation and Legal Advice Section), JUSTICE/CRM-012 (Organized Crime and Racketeering Section), JUSTICE/CRM-019 (Requests to the Attorney General for Approval of Applications to Federal Judges for Electronic Interceptions), JUSTICE/CRM-022 (Witness Immunity Records), and JUSTICE/CRM-025 (Tax Disclosure Index File and Associated Records). Plaintiff additionally requested a search of the Narcotics and Dangerous Drug Section. Hsu Decl. ¶ 14, Exhibit 4.

8

Pursuant to long-standing FOIA/PA search procedures, a search sheet with a copy of the plaintiff's request is transmitted to all sections that may have records responsive to the plaintiff's request. A copy of the "Privacy Act Identification and Request Form" which plaintiff had completed was forwarded with the search sheets. See Exhibit 3. Designated personnel employed by the pertinent sections undertake a search for responsive materials and report the results by means of individual, signed forms to the Criminal Division FOIA/PA Unit. Id. Searches are to be undertaken in the same manner as if the Criminal Division were seeking the information for its own, official purposes. Id. By this means, the Criminal Division aims to ensure that its searches fully meet the criteria established under the Freedom of Information Act, Privacy Act, and interpretative decisional law.[3] Hsu Decl. ¶ 15

Ms. Hsu personally reviewed all of the original signed search responses in this case, and has verified that all of the Criminal Division's Privacy Act systems of records designated by the plaintiff were searched and no record responsive to plaintiff's request was located. Hsu Decl. ¶ 16. While the search did not locate any responsive records, it was an adequate search under FOIA.

The Criminal Division has conducted an adequate search and met its burden under FOIA.

### 3. IRS Conducted A Reasonable Search

On or about January 17, 2006, Heidi Peterson, Appeals Officer, Internal Revenue

---

[3] Unlike the Federal Bureau of Investigation or the Federal Bureau of Prisons, the Criminal Division assigns no special identification numbers to individuals. Nor does it maintain files based on social security numbers. Nor does it maintain any field offices outside the Washington, D.C. area. Finally, unlike certain other law enforcement components, the Criminal Division maintains no separate "see reference" or "cross-reference" files requiring separate searches.

Service, Riverside, California Appeals Office, was asked to conduct a search to determine whether any FOIA requests had been filed with the Service by, or on behalf of, Jimmy Sharbutt. Peterson Decl. ¶ 3.

The Appeals Centralized Database System ("ACDS") is the Appeals Division's computerized information system for case receipt, control and processing. One of the ways in which records of FOIA appeals may be searched in ACDS is by using the last name of the requester. Peterson Decl. ¶¶ 4, 5.

Ms. Peterson searched the ACDS and her search produced no records of FOIA appeals filed by, or on behalf of, Mr. Sharbutt. Peterson Decl. ¶ 4.

In addition to the review of the ACDS, Ms. Peterson searched the Service's Electronic Disclosure Information Management System ("EDIMS") using the taxpayer's last name to determine whether any FOIA requests had been filed by, or on behalf of, plaintiff. The search was performed by using "Sharbutt" as the name of the requester, and again as the name of the taxpayer. EDIMS is a computerized information system for inventory control and casework management of disclosure requests made to the Service's disclosure offices. The EDIMS search revealed that no records of a FOIA request by, or on behalf of, plaintiff's existed. Peterson Decl. ¶ 6.

Following the search of EDIMS, Ms. Peterson reviewed the Service's Internal Data Retrieval System ("IDRS") for information pertaining to taxpayers named "Jimmy Sharbutt." IDRS is a computerized information system that provides Service employees with access to certain taxpayer information. Service employees with access to IDRS can research the social security numbers of taxpayers using taxpayer's names. The search revealed social security

numbers for three taxpayers having that name. With that information, Ms. Peterson searched

EDIMS by social security number. However, the search again revealed that no FOIA requests

have been submitted by, or on behalf of, plaintiff. Peterson Decl. ¶ 7.

    The IRS conducted an adequate search and has met its burden under FOIA.

**E.    ATF, USMS, FBI and BOP Found Responsive Documents And Released All Responsive, Non-Exempt Records**

    **1.  The ATF's Search For Responsive Documents Was Reasonable**

    On July 25, 2005, ATF's Disclosure Division received Plaintiff's July 16, 2005 FOIA

request. Graham Decl. ¶ 6. Upon receipt of plaintiff's FOIA request, the Disclosure Division

executed an independent and thorough search for all responsive material. The first step in

conducting such a search was a query of the Treasury Enforcement Communications Systems

("TECS").[4]  TECS is a text-based data, owned and maintained by the Bureau of Customs and

Border Protection, U.S. Department of Homeland Security, and contains information that may be

of interest to law enforcement agencies. Graham Decl. ¶ 33.

    The Disclosure Division made a query of TECS utilizing plaintiff's personal information

including his name and date of birth. As a result of this search ATF located a responsive file,

Criminal Investigatory file 781065-03-0046. The filed was associated with ATF's Dallas Field

Division and accordingly the file was requested by the Disclosure Division for processing.

Graham Decl. ¶ 34.

    ATF conducted a search of all locations that likely contained responsive documents using

methods reasonably expected to uncover all relevant documents. Graham Decl. ¶ 35.

---

    [4] TECS database is utilized by ATF to locate records within the Criminal Investigation Report System of Records.  See 68 Fed. Reg. 3553.  Graham Decl. ¶ 33.

## 2. The USMS's Search For Responsive Documents Was Reasonable

Plaintiff submitted a request letter to the United States Marshals Service Headquarters dated April 1, 2005, and requested all documents relating to himself. Bordley Decl. ¶ 3, Exhibit A.

The USMS conducted a search for records on plaintiff, pursuant to his request, in the USMS office he identified, i.e., the Northern, Western, and Eastern Districts of Oklahoma, and the Eastern District of Arkansas. The USMS searched in all locations that could reasonably be expected to contain the responsive documents, if such records existed with the records and files of the USMS. Bordley Decl. ¶ 4.

The initial document search relevant to plaintiff's request, was directed to the USMS FOI/PA liaisons in the district offices referenced in plaintiff's request. Bordley Decl. ¶ 5. The USMS completed its search for records pertaining to plaintiff, and by letter dated July 6, 2005, the USMS advised plaintiff that the USMS located no records pertaining to him. Bordley Decl. ¶ 7, Exhibit D.

Plaintiff filed an administrative appeal of the USMS action on his request by letter dated July 16, 2005. OIP acknowledged receipt of plaintiff's appeal correspondence by letter dated August 10, 2005. Bordley Decl. ¶ 8, Exhibit E.

Upon notification of the appeal, the OGC FOI/PA Specialist personally telephoned the FOI/PA Liaisons in the Northern, Eastern and Western Districts of Oklahoma and the Eastern District of Arkansas to verify their "no records" response. FOI/PA Liaisons in the Eastern and Western Districts of Oklahoma, and the Eastern District of Arkansas U.S. Marshals offices confirmed that they located no records on plaintiff after conducting a second search of their

12

records and files. Bordley Decl. ¶ 9.

As a result of this second search, the Northern District of Oklahoma U.S. Marshal's office located fifty-five (55) pages of information pertaining to plaintiff that had not been located in the initial search due to an administrative oversight. The records pertaining to plaintiff were located in the Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005, and the Warrant Information Network (WIN), JUSTICE/USM-007, systems of records. Records maintained in these systems are compiled for law enforcement purposes in connection with the USMS receipt, processing, transportation and custody of prisoners, the execution of Federal arrest warrants, and the investigation of fugitive matters. Id. ¶ 10. See Rule 4, Fed.R.Cr.Procedure, 18 U.S.C. §4086, 28 U.S.C. § 566, and 28 C.F.R. § 0.111(a),(j),(k),(q). As such, these systems of records were exempt from the access provisions of the Privacy Act pursuant to 5 U.S.C. Section 552a(j)(2). See 28 C.F.R. Section 16.101(a),(q). Id. Therefore, to ensure maximum access, plaintiff's records were processed for disclosure pursuant to FOIA, 5 U.S.C. Section 552. Bordley Decl. ¶ 10.

By letter dated September 19, 2005, the USMS informed plaintiff in its response that after conducting a supplemental search of its files, fifty-five (55) pages had been located which were indexed to plaintiff's name. Of the fifty-five (55) pages located which pertained to plaintiff, thirty-three (33) pages were disclosed to plaintiff in their entirety, three pages were referred to the Federal Bureau of Investigation ("FBI"), four pages were referred to the Executive Office for U.S. Attorneys ("EOUSA"), and the remaining fifteen (15) pages were disclosed with minimal deletions pursuant to exemption 7(C) of the Freedom of Information Act, 5 U.S.C. Section 552(b)(7)(C). Bordley Decl. ¶ 11, Exhibit F.

13

The USMS undertook an exhaustive search for records responsive to plaintiff's FOIA request. The search resulted in the location of responsive documents which were provided to plaintiff.

### 3. The BOP's Search For Responsive Documents Was Reasonable

On or about May 12, 2005, plaintiff's FOIA request dated April 19, 2005, was received by the BOP's FOIA/PA Section in Washington, D.C.  The request (2005-05147) was forwarded to the BOP's South Central Regional Office (SCRO) for response.  Plaintiff sought copies of documents from the Federal Correctional Institution (FCI) in El Reno, Oklahoma, the Federal Transfer Center (FTC) in Oklahoma City, and FCC Forrest City for "all ISM, SIS, and SIA files", including his FOIA Exempt file. The request was interpreted as a request for all records pertaining to him that were maintained in his Central and Medical Files, SIS records and copies from the FOI Exempt section of his Cental File at his designated institution, FCC Forrest City. Summers Decl. ¶ 4, Attachment 1.

On May 18, 2005, FCC Forrest City staff were informed that plaintiff would be directed to request review or copies of the releasable documents from his Central and Medical Files.  Staff were instructed to forward all FOI Exempt records maintained in plaintiff's Central File, as well as records maintained by the SIS/SIA, to the SCRO for review and release determination.[5] Summers Decl. ¶ 5, Attachment 2.

On June 2, 2005, BOP staff provided plaintiff the opportunity to review and/or receive copies of his Central File records.   Plaintiff signed a receipt indicating he was provided access to

---

[5] Attachment 1 contains a handwritten note from USP Beaumont staff indicating no SIA/SIS records were located relevant to plaintiff's request. Summers Decl. ¶ 5.

14

his Central File but did not request any copies. Summers Decl. ¶ 7, Attachment 4.

On June 3, BOP staff provided plaintiff the opportunity to review and/or receive copies of his medical records. Plaintiff signed a receipt indicating he requested and received 49 [pages] of his Medical File. Summers Decl. ¶ 8, Attachment 5.

By letter dated May 24, 2005, plaintiff was informed twenty two (22) responsive documents maintained in the "FOI Exempt" section of his Central File and/or investigative records were reviewed for release determination. Summers Decl. ¶ 9, Attachment 6.

A review of the twenty two (22) exempt records revealed two (2) pages were releasable in full; seven (7) pages were released with certain information excised pursuant to Title 5 U.S.C. §§ 552a(b)(2),(7)(C), and/or (b)(7)(F); and thirteen (13) pages were withheld in their entirety. Summers Decl. ¶ 10, Attachment 6.

The BOP undertook an exhaustive search for records responsive to Plaintiff's FOIA requests. This search resulted in the location of responsive documents which were provided to plaintiff.

### 4. **The FBI's Search For Responsive Documents Was Reasonable**

#### **FBIHQ Request**

By letter dated April 19, 2005, plaintiff submitted a request to FBIHQ requesting any and all documents, records and information maintained by the FBI concerning himself. Hardy Decl. ¶ 6, Exhibit A.

By letter dated May 19, 2005, FBIHQ notified plaintiff that based upon the information furnished, a search of the automated indices to its central records system files located no records at FBIHQ responsive to his FOIA request. Hardy Decl. ¶ 7, Exhibit B.

15

### Oklahoma City Request

By letter dated April 19, 2005, plaintiff submitted a FOIA request to the FBI Oklahoma City Field Office (OCFC) requesting any and all documents, records and information maintained by the FBI concerning himself. Hardy Decl. ¶ 11.

By letter dated May 12, 2005, FBIHQ advised plaintiff that his request to the OCFO was forwarded to FBIHQ for processing. Plaintiff was also advised that based upon the information provided, a search of its central records system located no records at OCFO responsive to his FOIPA request. Hardy Decl. ¶ 12, Exhibit G. By letter dated June 9, 2005, plaintiff filed an administrative appeal with the DOJ OIP requesting an official review of FBIHQ's "no record" response to his request to the FBI's OCFO. Hardy Decl. ¶ 13, Exhibit H.

By letter dated October 3, 2005, DOJ OIP advised plaintiff that after careful consideration and discussions between FBI and OIP personnel, OIP had decided to remand the FBI's action in regards to plaintiff's FBI OCFO request. Plaintiff was advised that the FBI had conducted a further search and located records responsive to his request, and would send the releaseable portions of these records directly to plaintiff. Hardy Decl. ¶ 15, Exhibit J.

By letter dated January 13, 2006, plaintiff was advised by the FBI that pursuant to his request 2 pages were reviewed and 2 pages were released. Plaintiff was advised that excisions had been made to protect information from disclosure pursuant to exemptions (b)(6), (b)(7)(A), and (b)(7)(C) of 5, USC § 552 (Freedom of Information Act), and exemption (j)(2) of the Privacy Act of 1974, 5 U.S.C. § 552a. Hardy Decl. ¶ 16, Exhibit K.

In response to plaintiff's June 9, 2005 administrative appeal for OCFO records related to himself, RIDS personnel conducted a second search of the OCFO automated indices and located

16

one two-page cross reference maintained in file 7A-OC-61637. This document was processed and released to plaintiff on January 13, 2006, with redactions taken pursuant to FOIA Exemptions 6, 7A, and 7C and Privacy Act Exemption j2. This two page document, located in a Kidnapping file, consists of an FBI agent interview of the plaintiff recorded on an FD-302 Form. Hardy Decl. ¶ 25[6].

## EXPLANATION OF THE CENTRAL RECORDS SYSTEM

The FBIHQ's method of searching for materials responsive to a FOIA request involves the use of its Central Records System ("CRS"). The CRS enables the FBI to maintain all information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. This system consists of a numerical sequence of files broken down according to subject matter. The subject matter of a file may relate to an individual, organization, company, publication, activity, or foreign intelligence matter. Certain records in this system are maintained at FBIHQ. Records which are pertinent to specific field offices of the FBI are maintained in those field offices. Hardy Decl. ¶ 20.

Access to the CRS is afforded by the General Indices, which are arranged in alphabetical order. The General Indices consist of index cards on various subject matters that are searched either manually or through the automated indices. The entries in the General Indices fall into two categories:

---

[6] The FBI has decided to withdraw its assertion of (b)(7)(A) originally cited in the January 13, 2006 release to plaintiff. Hardy Decl. ¶ 26.

(a) A "main" entry — A "main" entry carries the name corresponding with a subject of a file contained in the CRS.

(b) A "reference" entry — "Reference" entries, sometimes called "cross-references" are generally only a mere mention or reference to an individual, organization, etc., contained in a document located in another "main" file on a different subject matter.

Hardy Decl. ¶ 21.

Access to the CRS files at FBI field divisions is also afforded by the General Indices (automated and manual), which are likewise arranged in alphabetical order, and consist of an index on various subjects, including the names of individuals and organizations. Searches made in the General Indices to locate records concerning a particular subject, such as "Jimmy Lee Sharbutt", are made by searching the subject requested in the index. FBI field offices have automated indexing functions. Hardy Decl. ¶ 22.

On or about October 16, 1995, the Automated Case Support ("ACS") system was implemented for all field offices, Legal Attaches ("Legats") and FBIHQ. More than 105 million records were converted from automated systems previously utilized by the FBI. ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases:

(a) Investigative Case Management ("ICM") – ICM provides the ability to open, assign, and close investigative and administrative cases as well as to set, assign, and track leads. The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens a case. The offices that receives leads are referred to as Lead Offices ("LOs"), formerly known as Auxiliary Offices. When a case is opened, it is assigned a Universal Case File Number ("UCFN"), such as "7A-OC-61637", which is utilized by all FBI field offices, Legats, and

18

FBIHQ, that are conducting or assisting in the investigation. The "7A" indicates the classification for the specific type of investigation, which in this case is "Kidnapping"; "OC" indicates the Office of Origin of the investigation, which in this case is the OCFO; and "61637" indicates the individual case file number for the particular investigation.

       (b) Electronic Case File – ECF serves as the central electronic repository for the FBI's official text-based documents. ECF supports the universal serial concept, where only the creator of a document serializes it into a file, providing single source entry of serials into the computerized ECF system. All original serials are maintained in the OO case file.

       (c) Universal Index ("UNI") – UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index: however, the LOs may index additional information as needed. UNI, a 92.4 million record index, functions to index names to cases, and to search names and cases for use in FBI investigations. Names of individuals or organizations are recorded with identifying applicable information, such as sex, race, event date, date or place of birth, locality, Social Security number, or address. Hardy Decl. ¶ 23.

    The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the investigative FBI Special Agent ("SA") assigned to work on the case, the supervisor in the field office conducting the investigation, and the supervisory SA at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval. Without a "key" or index to this mass of data, information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated

mission of the FBI, which is to investigate violations of federal criminal and national security statutes.  Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual. The CRS  enables the FBI to maintain all information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities.  The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes.  This system consists of a numerical sequence of files broken down according to subject matter.  The subject matter of a file may relate to an individual, organization, company, publication, activity, or foreign intelligence matter.  Certain records in this system are maintained at FBIHQ.  Records which are pertinent to specific field offices of the FBI are maintained in those field offices.   Hardy Decl. ¶ 24.

The General Indices consist of index cards on various subject matters that are searched either manually or through the automated indices.  An Index reference falls into two general categories: (1) a "main" entry –– A "main" entry carries the name corresponding with a subject of a file contained in the CRS.  (2) a "reference" entry –– "Reference" entries, sometimes called "cross- references" are generally only a mere mention or reference to an individual, organization, etc., contained in a document located in another "main" file on a different subject matter.  Hardy Decl. ¶ 25.

F.    **The Defendants BOP and ATF Appropriately Relied On Exemption 2**

Pursuant to 5 U.S.C. § 552(b)(2) (" Exemption 2"), the Government is not required to disclose records "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Exemption 2 applies primarily to two types of materials:

20

(1) internal agency matters so routine or trivial that they could not be "subject to ... a

genuine and significant public interest" and (2) internal agency matters of some public

interest "where disclosure may risk circumvention" of statutes or agency regulations.

Department of Air Force v. Rose, 425 U.S. 352, 369-70 (1976); Schiller v. N.L.R.B., 964 F.2d

1205, 1207 (D.C.Cir. 1992); National Treasury Employees Union v. U.S. Customs Service, 802

F.2d 525, 528-30 (D.C.Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d

1051, 1073-74 (D.C.Cir. 1981); Truesdale v. U.S. Dept. of Justice, 2005 WL 3294004, *4 - 5

(D.D.C., 2005); Gonzalez v. Bureau of Alcohol, Tobacco and Firearms, 2005 WL 3201009, *6

(D.D.C., 2005); Dorsett v. U.S. Dept. of Treasury, 307 F.Supp.2d 28, 35-36 (D.D.C., 2004);

Edmonds v. F.B.I., 272 F.Supp.2d 35, 50 (D.D.C., 2003).

Depending upon the nature of the information, documents will fall within either the "low

(b)(2) category" or the "high (b)(2) category." Schiller, 964 F.2d at 1207. "Low (b)(2)"

information refers to internal procedures and practices of an agency, where disclosure would

constitute an administrative burden unjustified by any genuine and significant public benefit.

Martin v. Lauer, 686 F.2d 24, 34 (D.C.Cir. 1982); see also Schiller, 964 F.2d at 1207. "Low

(b)(2)" information can be protected only if the information qualifies as a personnel rule or

internal practice of an agency or is sufficiently related to such a rule or practice. See Schwaner v.

Department of Air Force, 898 F.2d 793, 795 (D.C.Cir. 1990); Voinche v. F.B.I., 46 F.Supp.2d

26, 30 (D.D.C., 1999).

Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data

processing notations, brief references to previous communications, and other like administrative

markings are exempt from disclosure. Coleman v. F.B.I., 13 F.Supp.2d 75, 78-79 (D.D.C.,

1998), citing, Lesar v. U.S. Dept. of Justice, 636 F.2d 472 (D.C.Cir. 1980); see also Schiller, 964 F.2d at 1208 (protecting from disclosure internal agency time deadlines and procedures, recordkeeping directions, instructions on which agency official to contact for assistance, and guidelines on clearance procedures); Nix v. U.S., 572 F.2d 998, 1005 (4th Cir. 1978)(protecting cover letters of merely internal significance); Scherer v. Kelley, 584 F.2d 170, 175-78 (7th Cir. 1978)(protecting "file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references"); Voinche, 46 F.Supp.2d at 30 (protecting the file number for an informant and telephone extension of the Public Corruption Unit of the FBI's Criminal Investigation Unit); Wilson v. Department of Justice, 1991 WL 111457, at *2 (D.D.C., 1991)(protecting transmittal slips from low level officials). The notion behind this reasoning is that administrative agencies should not be burdened by responding to requests for trivial information unlikely to be the subject of public interest. Martin, 686 F.2d at 34.

## 1. **BOP Properly Applied Exemption 2**

Two (2) documents, (Central Inmate Monitoring Classification/Memorandum), were excised in part pursuant to §§ 522(b)(2)High and (b)(7)(F), because they contained information maintained solely for BOP purposes relating to internal law enforcement agency practices and release of the information could endanger the physical safety of other individuals/inmates. Summers Decl. 12. Additionally, three (3) documents (Central Inmate Monitoring Summary, SIS Investigative Report) were excised in part pursuant to §§ 522(b)(2)High, (b)(7)(F) and (b)(7)(C), because they contained information maintained solely for BOP purposes relating to internal law enforcement agency practices and release of the information could endanger the physical safety of other individuals/inmates, as well as constitute an unwarranted invasion of the personal privacy of other inmates. Summers Decl. ¶12, Attachment 6.

22

Information identified as "high 2" protects disclosure internal matters of a far more substantial nature which would risk the circumvention of a statute or agency regulation. Information can be protected through the use of "high" (b) (2) that is implicitly accorded law enforcement activities pertaining to, for example, guidelines conducting investigations, procedures for prison security, and vulnerability assessments. Summers Decl. ¶ 28.

Pursuant to the BOP's duty to manage Federal institutions in a manner which provides for the safekeeping of inmates in their custody, the BOP documents an inmate's Central Inmate Monitoring (CIM) assignment, meaning that there are other individuals, who may or may not be committed to the BOP, from whom an inmate is to be separated from for their mutual protection. Documentation to support "Separation" or similar CIM assignments, as determined by BOP, is routinely maintained in the "FOI Exempt" section of an inmate's central file. In addition to identifying a specific threat, or individual from who an inmate must be separated, these documents also contain other information which could lead to the identification of a specific threat, a separated individual, or the location of a separated individual. The release of such information could allow an individual to circumvent the BOP's efforts to minimize those threats and ultimately increase threats to the personal safety of individuals as well as the security of BOP institutions. Summers Decl. ¶ 29.

## 2. **ATF Properly Applied Exemption 2**

Pursuant to Exemption 2, ATF's Disclosure Division withheld: (1) Internal administrative codes used in a state prison database, (2) Internal administrative codes used in Federal and state criminal law enforcement databases, (3) Internal administrative codes and file numbers used in ATF files including, case summaries, reports of investigation and crime gun referral forms Graham Decl. ¶ 11.

23

The redacted information in the records that were provided to plaintiff consists of file numbers and other internal administrative codes. That information is for either administrative and/or law enforcement purposes only and is of no legitimate interest to the public. The disclosure of this material is either so trivial it does not warrant release or would risk the circumvention of law enforcement and investigatory efforts. Graham Decl. ¶ 13

Exemption (b) (2) is also being invoked for information contained in the Treasury Enforcement Communications System (TECS), a law enforcement database used by ATF to conduct criminal history checks. The data displayed on screen prints of TECS records is redacted for the following reasons. Information displayed identifies the terminal from which query was accomplished by a terminal ID and a logical unit ID to show is mainframe connection. The remaining data relates to the software application that identifies how the displayed record was retrieved, specifically, the software program mapping code; the routing codes within the program that allows the query to move from screen to screen, and; the codes that allow movement to other programs from the displayed screen. These are pieces of sensitive information that if in the hands of computer literate individuals with mainframe knowledge could provide information on the structure of the mainframe system used, exposing the system to possible circumvention. Further, disclosure could facilitate unauthorized access to ATF's database and interfere with investigations and law enforcement. Graham Decl. ¶ 14.

The documents released to plaintiff also included computer codes from other Federal law enforcement computer databases (e.g. NCIC, NLETS) and law enforcement computer databases maintained by the State of Oklahoma. Graham Decl. ¶ 15. Thus, disclosure of the information would thwart ATF's investigative and law enforcement efforts. Thus, exemption 2 was properly applied.

24

### 3. **ATF Properly Applied Exemption (b)(3)**

Title 5, United States Code, Section 552 (b)(3) (hereinafter Exemption 3) allows the

withhold of information protected from disclosure by another statute if that statute

> (A) requires that the matters be withheld from the public in such a way as to leave
> no discretion on the issue, or (B) establishes particular criteria for withhold or
> refers to particular types of matters to be withheld.

5 U.S.C. § 552 (b)(3).

While records may be withheld under the authority of another statute pursuant to

Exemption 3 if and only if that statue meets the requirements of Exemption 3, the breadth and

reach of the disclosure prohibition does not necessarily have to be found on the face of the statute

in question. The statute must at least explicitly deal with public disclosure. Reporters Comm.

for Freedom of the Press v. U.S.Dept. of Justice, 816 F.2d 730, 734-36 (D.C. Cir. 1987),

modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other grounds, 489 U.S.

749 (1989). Once an agency establishes that a statute is a nondisclosure statute and that it meets

at least one of the requirements of Exemption 3, it must also establish that the records at issue

fall within the withholding provision of the nondisclosure statute. Fund for Constitutional

Government v. National Archives and Records Service, 656 F.2d 856, 866-69 (D.C.Cir. 1981).

Typically, this requires an interpretation of the nondisclosure statute. See Washington Post Co.

v. U.S. Dept. of Justice, 863 F.2d 96, 100 (D.C.Cir. 1988).

Exemption (b)(3) of the FOIA permits the withholding of information prohibited from

disclosure by another statute only if one of two disjunctive requirements are met: the statute

either (A) requires that the matters be withheld from the public in such a manner as to leave no

discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular

types of matters to be withheld. A statute thus falls within the exemption's coverage if it

satisfies any one of its disjunctive requirements. Some responsive information to plaintiff's

FOIA request contained material subject to Public Law 108-447, which squarely fall within

Subpart (A) of FOIA Exemption (b)(3). Graham Decl. ¶ 16.

ATF withheld the following documents pursuant to Exemption 3, Consolidated

Appropriations Act of 2005, Pub. L. No. 108-447, 118 Stat. 2809:

Firearm Trace Reports , Graham Decl. ¶ 17.

### Exemption (b)(3)
### 108-447, (118 Stat. 2809)

Public Law 108-447 (118 Stat. 2809) reads in pertinent part:

"That no funds appropriated under this or any other Act with respect to any fiscal
year may be used to disclose part or all of the contents of the Firearms Trace
System database maintained by the National Trace Center of the Bureau of
Alcohol, Tobacco, Firearms, and Explosives or any information required to be
kept by licensees pursuant to section 923 (g) of title 18, United States Code, or
required to be reported pursuant to paragraphs (3) and (7) of such section 923 (g),
to anyone other than a Federal, State, or local law enforcement agency or a
prosecutor solely in connection with and for use in a bona fide criminal
investigation or prosecution and then only such information as pertains to the
geographic jurisdiction of the law enforcement agency requesting the disclosure
and not for use in any civil action or proceeding other than an action or
proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms, and
Explosives, or a review of such an action or proceeding, to enforce the provisions
of chapter 44 of such title, and all such data shall be immune from legal process
and shall not be subject to subpoena or other discovery in any civil action in a
State or Federal court or in any administrative proceeding other than a proceeding
commenced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives to
enforce the provisions of that chapter, or a review of such an action or
proceeding;" Graham Decl. ¶ 18.

The two pages withheld-in-full pursuant to Exemption (b)(3) are firearms Trace Reports

wholly derived from the contents of the Firearms Trace System Database referenced in Public

Law 108-447. Trace Reports are based and derived from information required to be kept by a

Federal Firearms Licensee ("FFL") pursuant to 18 U.S.C. § 923(g). As such, and through the

language of P.L. 108-447, Congress has expressly prohibited ATF from releasing such

documents to the public and made them ultimately immune from legal process.[7]  Graham Decl. ¶ 19.

### 4. **FBI Properly Applied Exemptions (b)(6) -1, 2, 3**

Exemption 6 permits the government to withhold all information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute an unwarranted invasion of personal privacy." See 5 U.S.C. § 552(b)(6).

The threshold issue to be determined in the application of Exemption 6 was firmly established in U.S. Dept. of State v. Washington Post Co., 456 U.S. 595 (1982).  The Supreme Court made clear that all information that "applies to a particular individual" meets the threshold requirement for protection under Exemption 6.  Id. at 602.

"The next step under Exemption 6 involves identifying the relevant privacy interests in non-disclosure and the public interests in disclosure, and determining 'whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy.'" Reed v. NL.R.B., 927 F.2d 1249, 1251 (D.C. Cir. 1991) (quoting National Ass'n of Retired Federal Employees v. Horner, 879 F.2d 873, 875 (D.C. Cir. 1989) cert. denied, 494 U.S. 1078 (1990).  "'The phrase 'clearly unwarranted invasion of personal privacy' enunciates a policy that will involve a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information.'" Department of Air Force v. Rose, 425 U.S. 352, 372 (1976).

Here, in asserting this exemption, each piece of information was scrutinized to determine the nature and strength of the privacy interest of any individual whose name and/or telephone

---

[7] Congress further restricted access to trace data in the 2006 Appropriation Act. P.L. 109-108, (119 Stat. 2290) (11/22/2005).   Graham Decl. ¶ 19.

number appeared in this record. In withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure. In making this analysis, public interest information was determined to be information which would shed light on the FBI's performance of its statutory duties. In each instance where information was withheld pursuant to Exemption (b)(6), it was determined that the individual's privacy rights outweighed the public interest in disclosure. Hardy Decl. ¶ 32.

### a.    (b)(6)-1    Name of an FBI Special Agent

Exemption (b)(6)-1 has been asserted in conjunction with Exemption (b)(7)(C)-1 to protect the name of an FBI SA who was responsible for conducting, supervising, and/or maintaining the investigative activities reported in this Kidnaping investigation. Publicity, adverse or otherwise, regarding any particular investigation conducted by SAs may seriously impair their effectiveness in conducting future investigations. The privacy consideration also protects SAs from unnecessary, unofficial questioning as to the conduct of an investigation, whether or not they are currently employed by the FBI. FBI SAs conduct official inquiries into violations of various criminal statutes, counterterrorism and national security cases. They come into contact with all strata of society and conduct searches and make arrests, both of which result in reasonable, but nonetheless serious disturbances in the lives of individuals. It is possible for a person targeted by such law enforcement action to carry a grudge which may last for years, and to seek revenge on the SAs involved in the investigation. The publicity associated with the release of the identity of a FBI Special Agent in connection with a particular investigation could trigger hostility towards the SA by such persons. Accordingly, there is no legitimate public interest to be served in the disclosure of the name of the SA in this Kidnaping investigation to the public. Hardy Decl. ¶ 33.

**b.**    **(b)(6)-2**    **Name of a State Government Law enforcement Employee**

Exemption (b)(6)-2 has been asserted in conjunction with Exemption (b)(7)(C)-2 to

withhold the name of an Oklahoma Bureau of Narcotics Agent who assisted in this interview.

Disclosure of this individual's identity would seriously jeopardize his/her effectiveness in the

performance of his/her official duties. Further, the rationale for protecting FBI Special Agents

identities found at paragraph 33, supra, also pertains to withholding the name of State Law

Enforcement Personnel. There is no public interest to be served by releasing this information.

Hardy Decl. ¶ 34.

**c.**    **(b)(6)-3**    **Names and/or identifying information of individuals who are of investigative interest to the FBI.**

FOIA Exemption (b)(6)-3 has been asserted in conjunction with (b)(7)(C)-3 to exempt

from disclosure the names and/or identifying information of third party individuals in whom the

FBI has an investigative interest in the context of this Kidnaping investigation. The protected

personal information about these individuals includes their names and/or home telephone

number. Being linked with any law enforcement investigation carries a strong negative

connotation. To release the identities of these individuals to the public in the context of a FBI

criminal investigation would subject them to harassment or embarrassment, as well as undue

public attention. The personal privacy interests of these individuals would be severely infringed

upon if their identities were released in the context of this Kidnaping investigation as individuals

of investigative interest to the FBI. After identifying the substantial privacy interests of these

individuals, the FBI balanced their interests against the public interest in disclosure. The FBI

could not identify any legitimate public interest in release of this identifying information since it

would not shed any light on the operations and activities of the FBI in this Kidnaping

investigation. Accordingly, the FBI has properly withheld this information pursuant to FOIA

29

Exemption (b)(6). Hardy Decl. ¶ 35.

## H.    ATF, BOP, FBI and USMS Properly Applied Exemption 7(C)

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled

for law enforcement purposes when disclosure "could reasonably be expected to constitute an

unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The Supreme Court has

affirmed the broad scope of Exemption 7(C) in National Archives and Records Admin. v. Favish,

541 U.S. 157, 124 S. Ct. 1570 (2004) (upholding application of Exemption 7(C) and recognizing

substantial privacy interests of federal and non-federal law enforcement officer and other

government employees). The records of ATF, USMS, BOP, and FBI are compiled for law

enforcement purposes. Bordley ¶ 13, Summers ¶ 10, Hardy Decl. ¶ 26 and Graham Decl. ¶ 22

(discussing each agencies' law enforcement mission). When a criminal law enforcement agency

invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." Keys

v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987), citing Pratt v. Webster, 673 F.2d

408, 418 (D.C.Cir. 1982). A criminal law enforcement agency must simply show that "the nexus

between the agency's activity . . . and its law enforcement duties" is "'based on information

sufficient to support at least "a colorable claim" of its rationality.'" Keys, 830 F.2d at 340,

quoting Pratt v. Webster, 673 F.2d 408, 421 (D.C. Cir. 1982).

Once the agency has demonstrated that the records were compiled for law enforcement

purposes, the Court must next consider whether the release of information withheld "could

reasonably be expected to constitute an unwarranted invasion of personal privacy." This

determination necessitates a balancing of the individual's right to privacy against the public's

right of access to information in government files. See, e.g., Favish, S. Ct. at 1580-82; U.S.

Dept. of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 776-80 (1989).

The Supreme Court has made clear that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' Department of Air Force v. Rose, 425 U.S. 352, 372 (1976), rather than on the particular purpose for which the document is being requested." Reporter's Committee, 489 U.S. at 772 (internal quotation marks omitted). Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve." Id. at 775. That public interest is to "shed[] light on an agency's performance of its statutory duties." Id. at 772. The plaintiff bears the burden of establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests." Perrone v. F.B.I., 908 F. Supp. 24, 26 (D.D.C. 1995), citing Senate of the Com. of Puerto Rico on Behalf of Judiciary Committee v. Department of Justice, 823 F.2d 574, 588 (D.C.Cir. 1987).

Significantly, it is the "interest of the general public and not that of the private litigant" that matters. Brown v. Federal Bureau of Investigation, 658 F.2d 71, 75 (2d Cir. 1981). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" Davis v. Department of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting Reporters Committee, 489 U.S. at 773 (internal quotation marks omitted).

Further, courts have explicitly recognized that the privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure (of third-party identities)is not just less substantial, it is insubstantial." SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1205 (D.C.Cir. 1991). Our court of appeals has held "categorically" that

31

"unless access to names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." SafeCard Services, 926 F.2d at 1206.

Exemption 7(C) consistently has been held to protect the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations. Reporters Committee, 489 U.S. at, 780); Computer Professionals for Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting "'strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity,'" quoting Dunkelberger v. Department of Justice, 906 F.2d 779, 781 (D.C.Cir. 1990). Indeed, an agency may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity. Reporters Committee, 489 U.S. at 780; Nation Magazine, Washington Bureau v. U.S. Customs Service, 71 F.3d 885, 893, 895-96 (D.C.Cir. 1995); SafeCard Services, 926 F.2d at 1206.

Likewise, the names of law enforcement officers who work on criminal investigations have traditionally been protected against release by Exemption 7(C). Davis, 968 F.2d at 1281; Lesar v. U.S. Dept. of Justice, 636 F.2d 472, 487-88 (D.C.Cir. 1980). Review of the declarations and Vaughn information shows that many of the excisions made by ATF, BOP, FBI and USMS, relate to protecting the identity of agents and employees of the agencies. Graham Decl. ¶¶ 31-32; Bordley Decl. ¶ 13; Hardy Decl. ¶ 28; Summers Decl. ¶ 10. Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. Computer Professionals for Social

Responsibility, 72 F.3d at 904; Farese v. U.S. Dept. of Justice, 683 F. Supp. 273, 275 (D.D.C., 1987). The Vaughn index provided reflects clearly that Exemption 7(C) was appropriately applied in this case to protect names and personal information on individuals.

### 1. ATF Properly Applied Exemption 7(C)

ATF is a criminal and regulatory enforcement agency within the Department of Justice and is responsible for, among other things, enforcing Federal firearms laws including the Gun Control Act of 1968, 18 U.S.C. §§ 921-930, the Federal explosives laws, 18 U.S.C. Chapter 40, and the National Firearms Act, 26 U.S.C. Chapter 53. See 68 Fed.Reg. 4923 (2003). Graham Decl. ¶ 20.

ATF applied Exemption 7(C) to withhold (1) the names of Federal and state law enforcement support staff employees as well as information by which those individuals could be identified; (2) the names of Federal and state law enforcement agents as well as information any which those individuals could be identified; (3) the name of third party individuals referenced in connection with the investigation either as witnesses or leads, as well as information by which those individuals could be identified and (4) the name of third party individuals referenced in the investigation who have no connection whatsoever to the investigation, as well as information by which those individuals could be identified. Graham Decl. ¶ 21.

The individuals whose identities have been protected, are not the requester. Furthermore, plaintiff presented no waivers that would permit release of any third-party individuals' information. Graham Decl. ¶ 24.

The individuals' names and identifying information were complied in connection with an investigation into violations various crimes including possession of a firearm by a felon and possession of a controlled substance and, as such, meet Exemption 7's threshold requirement of

"records or information compiled for law enforcement purposes." Graham Decl. ¶ 25.

Revealing this information is unlikely to add to the public's understanding of how an agency works or how well it performs its duties. On balance, the Disclosure Division determined that the substantial privacy interest, which is protected by withholding this information, outweighs any minimal public interest that would be served by its release. Such a release would be "clearly unwarranted" as required by 5 U.S.C. § 552(b)(6). This is the higher of the two standards of invasion of privacy, the release of this information also would be "unwarranted" as required by 5 U.S.C. § 552(b)(7)(C). Graham Decl. ¶ 26.

ATF applied Exemption 7(C) to withhold the names, addresses, phone numbers, titles and other identifying information related to third party individuals and witnesses interviewed by ATF during the course of the investigation, law enforcement officers, and other private individuals merely mentioned in ATF's files. Graham Decl. ¶ 28.

The third parties referenced in plaintiff's files are described in sufficient detail to allow for the identification of those third parties by persons familiar with the circumstances and facts of ATF's investigation of plaintiff. ATF determined that third parties could reasonably be expected to be embarrassed and humiliated by being associated with this investigation. Further ATF determined that the witnesses referenced in plaintiff's files has the very real potential to endanger such witnesses or cause harassment and harm to the witness' lives and reputations. Plaintiff has a well-documented history of harassment and witness intimidation that includes threatening families of law enforcement personnel. In addition, disclosure may well discourage future witnesses from cooperating with ATF. After balancing the interests at stake, ATF determined that the types of personal information involved here could reasonably be expected to cause the third parties referenced in its files and third party witnesses embarrassment, harassment, and

34

harm, and would do little, if anything at all, to aid the public's understanding of the ATF. Graham Decl. ¶ 29.

ATF also invoked Exemption 7(C) to protect the names and identifying information of third parties who were investigated by ATF. ATF determined that the disclosure of this information could reasonably be expected to constitute an unwarranted invasion of these third parties' privacy, because being associated with ATF's criminal investigation into plaintiff's unlawful actions carries a stigmatizing and negative connotation. Thus, ATF determined that the third parties possess a substantial privacy interest in not having this information disclosed. After ATF identified the substantial privacy interests at stake, ATF balanced those interest against any public interest in the disclosure. ATF determined that because the disclosure of the names and identities of these third parties would not shed any light on ATF's activities, it could not identify any discernible public interest in the disclosure. Graham Decl. ¶ 30.

ATF asserted exemption (b)(7)(C) to protect the identities of ATF special agents and other law enforcement personnel such as supervisory and technical personnel who were involved in law enforcement operations. The identities of ATF special agents and other law enforcement personnel that appear in law enforcement records are protected since disclosure might seriously prejudice their effectiveness in conducting investigations to which they are assigned or subject them to unwarranted harassment. Graham Decl. ¶ 31.

In determining whether to identify ATF Special Agents and other law enforcement personnel, ATF balanced the interest in disclosure against the individuals' privacy interest. Plaintiff did not assert any discernible public interest in this particular type of information. ATF determined that the privacy interests of law enforcement personnel substantially outweigh any public interest, and that the names of law enforcement personnel would not be disclosed.

35

The fact that plaintiff may know, or be able to independently determine the identities of some agents or other law enforcement personnel whose names have been withheld does not diminish the exemption's protection of these individual. Thus, the deleted information is exempt under Exemption (b) (7) (C). Graham Decl. ¶ 32.

### 2. BOP Properly Applied Exemption 7(C)

BOP applied Exemption 7(C) to information which was compiled by the BOP as part of its law enforcement mandate, consists of personal information about the parties. Specifically, two documents (Central Inmate Monitoring Data) were excised pursuant to §§ 522(b)(7)(C) and (b)(7)(F) because it would constitute an unwarranted invasion of the personal privacy of other inmates and could endanger their physical safety. Additionally, three (3) documents (Central Inmate Monitoring Summary, SIS Investigative Report) were excised in part pursuant to §§ 522(b)(2)High, (b)(7)(F) and (b)(7)(C), because they contained information maintained solely for BOP purposes relating to internal law enforcement agency practices and release of the information could endanger the physical safety of other individuals/inmates, as well as constitute an unwarranted invasion of the personal privacy of other inmates. Summers Decl. ¶ 12, Attachment 6.

### 3. USMS Properly Applied Exemption 7(C)

USMS applied Exemption 7(C) to the documents released to plaintiff to withhold the names and information of federal and non-federal law enforcement officers and other government employees. Plaintiff presents no public interest to warrant disclosing the names of these individuals, nor does the USMS believe that public disclosure of this information is warranted. Conversely, there is a legitimate public interest in promoting the efficient performance of official duties which is fostered by shielding government employees from

unnecessary public attention, harassment, and annoyance or possible danger. Additionally, one who serves as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of their official duties. Public identification of these law enforcement officers and other government employees could subject them to harassment and unwarranted scrutiny, both in the course of performing their official duties and in their private lives, and could possibly pose a danger to their life or physical safety. Therefore, the public interest weighs in favor of non-disclosure to foster privacy and the efficient performance of official duties regarding the receipt, processing, transportation and custody of prisoners, the execution of Federal arrest warrants, and the investigation of fugitive matters. Absent a legitimate public interest, disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. Section 552(b)(7)(C). Bordley Decl. ¶ 13.

Exemption 7(C) was also applied to withhold information pertaining to third party individuals, including prisoners other than plaintiff. In reaching the decision to withhold personally identifiable information from documents released to plaintiff, the USMS considered whether or not there was a legitimate public interest in disclosure which would outweigh the individual's privacy interest in non-disclosure. However, it is not readily apparent how information identifiable to prisoners other than plaintiff and other private individuals would satisfy a legitimate public need for information about the workings of our criminal justice system and the USMS could discern no legitimate public interest in disclosure of this information. Release of this identifying information could expose these individuals to unwarranted public attention, embarrassment, harassment or annoyance for being associated with an official criminal law enforcement matter. Further, he provides no indication as to how disclosure of such information would meet the basic purpose of the FOIA i.e., to shed light on an agency's

performance of its statutory duties, nor can the USMS discern any public interest in disclosure which would outweigh the privacy of these individuals, including the possible danger to their life or physical safety for cooperating in law enforcement activity. Disclosure to plaintiff would be equivalent to disclosure to the public and, as such, would constitute a clearly unwarranted invasion of personal privacy since no legitimate interest would be served by disclosure. Bordley Decl. ¶ 14.

### 4. **FBI Properly Applied Exemptions 7(C)-1, 2, 3**

Exemption (b)(7)(C)-1 has been asserted in conjunction with Exemptions (b)(b)-1 to protect the names of FBI Special Agents who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in this Kidnaping investigation. Publicity, adverse or otherwise, regarding any particular investigation conducted by SAs may seriously impair their effectiveness in conducting future investigations. The privacy consideration also protects SAs from unnecessary, unofficial questioning as to the conduct of an investigation, whether or not they are currently employed by the FBI. FBI SAs conduct official inquiries into violations of various criminal statutes, counter-terrorism and national security cases. They come into contact with all strata of society and conduct searches and make arrests, both of which result in reasonable, but nonetheless serious disturbances in the lives of individuals. It is possible for a person targeted by such law enforcement action to carry a grudge which may last for years, and to seek revenge on the SAs involved in the investigation. The publicity associated with the release of the identity of a FBI Special Agent in connection with a particular investigation could trigger hostility towards the SA by such persons. Accordingly, there is no legitimate public interest to be served in the disclosure of the name of the SA in this Kidnaping investigation to the public. Hardy Decl. ¶ 41.

38

Exemption (b)(7)(C)-2 has been asserted in conjunction with Exemption (b)(6)-2 to withhold the name of an Oklahoma Bureau of Narcotics Agent who assisted in this interview. Disclosure of this individual's identity could seriously jeopardize his/her effectiveness in the performance of his/her official duties. Further, the rationale for protecting FBI Special Agents identities found at paragraph 41, supra, also pertains to withholding the name of State Law Enforcement Personnel. There is no public interest to be served by releasing this information. Hardy Decl. ¶ 42.

FOIA Exemption (b)(6)-3 has been asserted in conjunction with the In subcategory (b)(7)(C)-3 the FBI withheld information pursuant to Exemption 7(C), the names and/or identifying information of third party individuals in whom the FBI has an investigative interest in the context of this Kidnaping investigation. The protected personal information about these individuals includes their names and/or home telephone number. Being linked with any law enforcement investigation carries a strong negative connotation. To release the identities of these individuals to the public in the context of a FBI criminal investigation could subject them to harassment or embarrassment, as well as undue public attention. The personal privacy interests of these individuals could be severely infringed upon if their identities were released in the context of this Kidnaping investigation as individuals of investigative interest to the FBI. After identifying the substantial privacy interests of these individuals, the FBI balanced their privacy interests against the public interest in disclosure. The FBI could not identify any legitimate public interest in release of this identifying information since it would not shed any light on the operations and activities of the FBI in this Kidnaping investigation. Accordingly, the FBI has properly withheld this information pursuant to FOIA Exemption (b)(7)(C). Hardy Decl. ¶ 43.

39

I.    **BOP Properly Applied Exemption 7(F)**

Title 5, United States Code, Section 552 (b)(7)(F) (hereinafter Exemption 7(F)) protects

from mandatory disclosure information compiled for law enforcement purposes if disclosure

would reasonably be expected to endanger the life or physical safety of any individual, 5 U.S.C. §

552 (b)(7)(F).   Courts have consistently upheld the application of this exemption to protect

information identifying law enforcement officers, and special agents who are especially likely to

be in contact with violent suspects.  Maroscia v. Levi, 569 F.2d 1000, 1002 (7th Cir. 1977);

Albuquerque Pub. Co., 726 F. Supp. 851, 858 (D.D.C., 1989); Docal v. Bennsinger, 543 F. Supp.

38, 48 (M.D.Pa., 1981); Nunez v. Drug Enforcement Administration, U.S. Dept. of Justice, 497

F. Supp. 209, 212 (S.D.N.Y. 1980).  Although this Exemption applies to information that is also

subject to the protection of Exemption 7(C), supra, there is no balancing required with the use of

Exemption 7(F) and it is difficult to imagine any public interest that could outweigh the safety of

an individual.

After careful consideration of the safety and security concerns of other

individuals/inmates, the BOP determined that certain documents should be withheld pursuant to

Exemption 7 (F) as fully detailed and described in the attached Vaughn Index.  Summers Decl. ¶

25.

J.    **Segregability**

The Court of Appeals for the District of Columbia Circuit has held that a District Court

considering a FOIA action has "an affirmative duty to consider the segregability issue sua

sponte." Trans-Pacific Policing Agreement v. U.S. Customs Service, 177 F.3d 1022, 1028 (D.C.

Cir. 1999).  The FOIA requires that if a record contains information that is exempt from

disclosure, any "reasonably segregable" information must be disclosed after deletion of the

exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Mead Data Central, Inc. v. U.S. Dept. of Air Force, 566 F.2d 242, 260 (D.C.Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements". Mead Data, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. Id. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C.Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." Mead Data, 566 F.2d at 261, n.55.

Defendants BOP, USMS, FBI and ATF have produced all segregable information contained in their respective file records. To demonstrate that all reasonably segregable material has been released, the agency must show "with reasonable specificity" why a document cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C.Cir. 1996).

Here, defendants found that no information was segregable from exemption information. See Summers Decl. ¶ 31, Graham Decl. ¶ 36, Hardy Decl. ¶ 44, and Bordley Decl. ¶ 18 and Vaughn Indexes submitted therewith. Because no non-exempt information was found in relation to documents withheld in full, it was not possible to further segregate. Id.

41

## III. **CONCLUSION**

Defendants Drug Enforcement Administration, Bureau of Alcohol, Tobacco, Firearms and Explosives, United States Marshals Service, Federal Bureau of Investigation, Criminal Division, United States Bureau of Prisons, and Internal Revenue Service have demonstrated that they responded properly to plaintiff's FOIA request, releasing to him all records and portions thereof not exempted from disclosure. Accordingly, defendants' respectfully request that their Motion for Partial Summary Judgment be granted.

Respectfully submitted,

KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

R. CRAIG LAWRENCE, D.C. BAR #171538
Assistant United States Attorney

WYNEVA JOHNSON, D.C. Bar #278515
Assistant United States Attorney

BRENDA C. WILLIAMS
Paralegal Specialist

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _____3rd_____ day of March, 2006, that a copy of the

foregoing was filed and served by First-Class mail; postage prepaid to:

Jimmy Sharbutt
#09112-062
F.C.C.
Box 3000 (MEDIUM)
Forrest City, Arkansas 72366

WYNEVA JOHNSON
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W., E-4106
Washington, D.C. 20530
(202) 514-7224

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JIMMY SHARBUTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-2396 JGP |
| | ) |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS & | ) |
| EXPLOSIVES, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Defendants[1] respectfully submit this statement of material facts as to which there are no

genuine disputes in accordance with Local Rule 7.1(h). The declarations of the following

officials support this statement: (1) Leila I. Wassom, Paralegal Specialist, Office of Chief

Counsel, Administrative Law Section, Drug Enforcement Administration; (2) Averill P. Graham,

Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms, and Explosives ; (3) William

E. Bordley, Associate General Counsel and Freedom of Information/Privacy Act ("FOI/PA")

Officer of the United States Marshals Service; (4) Kathy Hsu, Attorney, Criminal Division,

United States Department of Justice, Office of Enforcement Operations; (5) Karen Summers,

Paralegal Specialist, Federal Bureau of Prisons, South Central Regional Office;

---

[1] The claims against the following components of the United States Department of Justice; the Drug Enforcement Administration, the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco, Firearms & Explosives, the United States Marshals Service, Criminal Division Office of Enforcement Operations, the Federal Bureau of Prisons and the Internal Revenue Service are addressed herein. The claim against the Executive Office of United States Attorneys is not addressed herein but will be briefed in a later filing.

(6) Heidi Peterson, Appeals Officer, Internal Revenue Service, Riverside, California Appeals

Office; and (7) David M. Hardy, Section Chief, Record/Information Dissemination Section,

Records Management Division, Federal Bureau of Investigation.

I.     **Drug Enforcement Administration ("DEA")**

1. By form letter dated April 19, 2005, the plaintiff requested records "in any way

connected to, related to, or even remotely in reference to my name". He specifically requested

"all Criminal Investigatory & Forfeiture records compiled from the Tulsa & Oklahoma City, OK

area." DEA construed the request to be for criminal investigation records about the plaintiff.

Declaration of Leila I. Wassom ("Wassom Decl.") ¶ 6 and Exhibit A.

2. By letter dated June 16, 2005, the plaintiff appealed to the Department of Justice,

Office of Information and Privacy (OIP) stating that DEA had not responded to his request.

Wassom Decl. ¶ 7 and Exhibit B.

2. By letter dated June 24, 2005, DEA acknowledged the plaintiff's request, and

informed him that it would be handled in approximate order of receipt.   The letter also

confirmed the plaintiff's agreement to pay all applicable fees up to $25.00, unless he sought a

waiver of fees.  Wassom Decl. ¶ 8 and Exhibit C.

3. By letter dated July 13, 2005, DEA informed the plaintiff that it had queried its

investigative indices using the information he provided and was unable to locate any records

responsive to his request.  DEA stated that if the plaintiff could provide additional information,

he could forward it to DEA.  As of this date, the plaintiff has not provided any further

information to DEA.  Wassom Decl. ¶ 9 and Exhibit D.

2

4. By letter dated July 23, 2005, the plaintiff appealed DEA's response to the Department of Justice, Office of Information and Privacy (OIP). Wassom Decl. ¶ 10 and Exhibit E.

5. By letter dated August 8, 2005, OIP acknowledged the plaintiff's appeal dated June 16, 2005, and informed him that it could not act on his appeal until DEA had made an initial determination. Wassom Decl. ¶ 11 and Exhibit F.

6. By letter dated August 10, 2005, OIP acknowledged the plaintiff's appeal dated July 23, 2005, and informed plaintiff that it would be handled in approximate order of receipt. Wassom Decl. ¶ 12 and Exhibit G.

7. By letter dated September 19, 2005, OIP affirmed DEA's no records response. Wassom Decl. ¶ 13 and Exhibit H.

## II.    Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF")

8. By letter dated June 28, 2005, the Office of Information and Privacy (OIP) acknowledged receipt of Mr. Sharbutt's FOIA appeal dated June 15, 2005. OIP further informed Mr. Sharbutt that ATF had no record of ever receiving a FOIA request from him. Consequently, OIP referred Mr. Sharbutt's June 15, 2005, letter to AFT for processing. Declaration of Averill P. Graham ("Graham Decl.") ¶ 4 and Exhibit A.

9. By letter dated July 1, 2005, ATF's Disclosure Division informed Mr. Sharbutt that they would begin processing his FOIA request upon receipt of a Certification of Identify Form. By same letter the Disclosure Division also explained the FOIA process and potential costs. Graham Decl. ¶ 5 and Exhibit B.

10. On July 25, 2005, AFT's Disclosure Division received from Mr. Sharbutt a FOIA

3

request dated July 16, 2005. Additionally, Mr. Sharbutt attached a Certification of Identify Form. Graham Decl. ¶ 6 and Exhibit C.

11. By letter dated July 26, 2005, the disclosure Division advised Mr. Sharbutt that his FOIA request was received. Graham Decl. ¶ 7 and Exhibit D.

12. By letter dated August 16, 2005, ATF's Disclosure Division granted Mr. Sharbutt's request in part. The Disclosure Division redacted and withheld some records pursuant to FOIA Exemptions (b) (2), (b) (3) Public Law 108-447,[2] and (b)(7)(C). Graham Decl. ¶ 8 and Exhibit E.

13. On September 22, 2005, OIP received from Mr. Sharbutt a FOIA Appeal dated September 10, 2005. Graham Decl. ¶ 9 and Exhibit F.

14. By letter dated September 23, 2005, OIP advised Mr. Sharbutt that his administrative appeal was received. Graham Decl. ¶ 10 and Exhibit G.

**III.    United States Marshals Service ("USMS")**

15. Plaintiff submitted a request letter to the United States Marshals Service (USMS) Headquarters dated April 1, 2005, received in the Office of General Counsel, May 5, 2005, requesting al documents relating to himself. Declaration of William E. Bordley ("Bordley Decl.") ¶ 3 and Exhibit A.

16. By letter dated May 13, 2005, the USMS, Office of General Counsel acknowledged receipt of plaintiff's request letter and advised him that the search for responsive documents had commenced, and he would be contacted when the processing of his request was completed.

---

[2] The document over sheet provided to Mr. Sharbutt on August 16, 2005, inadvertently cited 26 U.S.C. §6103 as the Exemption (b) (3) statute. Id. ¶ 8.

4

Bordley Decl. ¶ 3 and Exhibit B.

17. The USMS conducted a search for records on plaintiff, pursuant to his request, in the USMS office he identified, i.e., the Northern, Western, and Eastern Districts of Oklahoma, and the Eastern District of Arkansas. The USMS searched in all locations that could reasonably be expected to contain the responsive documents, if such records existed with the records and files of the USMS. Bordley Decl. ¶ 4.

18. The initial document search relevant to plaintiff's request, was directed to the USMS FOI/PA liaisons in the district offices referenced in plaintiff's request. The USMS FOI/PA Liaisons are knowledgeable about the records and files maintained by their particular office and routinely coordinate and/or conduct document searches in their district offices in response to FOIA and PA requests. Bordley Decl. ¶ 5.

19. By letter dated June 30, 2005, plaintiff filed an administrative appeal for the delay in processing his request to the Department of Justice, Office of Information and Privacy ("OIP"). By letter dated August 1, 2005, OIP closed plaintiff's appeal pending the completion of the processing of plaintiff's request. Bordley Decl. ¶ 6 and Exhibit C.

20. The USMS completed its search for records pertaining to plaintiff, and by letter dated July 6, 2005, the USMS advised plaintiff that the USMS located no records pertaining to him. Bordley Decl. ¶ 7 and Exhibit D.

21. Plaintiff filed an administrative appeal of the USMS action on his request by letter dated July 16, 2005. OIP acknowledged receipt of plaintiff's appeal correspondence by letter dated August 10, 2005. Bordley Decl. ¶ 8 and Exhibit E.

5

22.  Upon notification of the appeal, the OGC FOI/PA Specialist personally telephoned the FOI/PA Liaisons in the Northern, Eastern and Western Districts of Oklahoma and the Eastern District of Arkansas to verify their "no records" response.  FOI/PA Liaisons in the Eastern and Western Districts of Oklahoma, and the Eastern District of Arkansas U.S. Marshals offices confirmed that they located no records on plaintiff after conducting a second search of their records and files.  Brodley Decl. ¶ 9.

23.  As a result of this second search, the Northern District of Oklahoma U.S. Marshal's office located fifty-five (55) pages of information pertaining to plaintiff that had not been located in the initial search due to an administrative oversight.  The records pertaining to plaintiff were located in the Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005, and the Warrant Information Network (WIN), JUSTICE/USM-007, systems of records.  Records maintained in these systems are compiled for law enforcement purposes in connection with the USMS receipt, processing, transportation and custody of prisoners, the execution of Federal arrest warrants, and the investigation of fugitive matters.  See Rule 4, Fed.R.Cr.Procedure, 18 U.S.C. Section 4086, 28 U.S.C. Section 566, and 28 C.F.R. Section0.111(a),(j),(k),(q).  As such, these systems of records were exempt from the access provisions of the Privacy Act pursuant to 5 U.S.C. Section 552a(j)(2).  See 28 C.F.R. Section 16.101(a),(q).  Therefore, to ensure maximum access, plaintiff's records were processed for disclosure pursuant to FOIA, 5 U.S.C. Section 552.  Brodley Decl. ¶ 10.

24.  By letter dated September 19, 2005, the USMS informed plaintiff in its response that after conducting a supplemental search of its files, fifty-five (55) pages had been located which were indexed to plaintiff's name.  Of the fifty-five (55) pages located which pertained to

6

plaintiff, thirty-three (33) pages were disclosed to plaintiff in their entirety, three pages were

referred to the Federal Bureau of Investigation (FBI), four pages were referred to the Executive

Office for U.S. Attorneys (EOUSA), and the remaining fifteen (15) pages were disclosed with

minimal deletions pursuant to exemption 7(C) of the Freedom of Information Act, 5 U.S.C.

Section 552(b)(7)(C). Brodley Decl. ¶ 11 and Exhibit F.

IV.    **Criminal Division, Department of Justice Office, of Enforcement Operations**

25. By letter dated April 19, 2005, plaintiff made a request to the Department of Justice,

Criminal Division's FOIA/PA Unit for records concerning himself. Declaration of Kathy Hsu

("Hsu Decl.") ¶ 4 and Exhibit 1.

26. By letter addressed to the plaintiff dated May 13, 2005, the Criminal Division

acknowledged receipt of his request and advised him that the request had not been received in

proper form and before further action could be taken n processing his request additional

information would be required from him. Specifically, plaintiff was advised that the FOIA/PA

Unit was unable to search for the records requested because the plaintiff had not furnished a

"Privacy Act Identification and Request Form," and he did not indicate on the "Criminal

Division's List of Systems of Records Form" which systems of records maintained by the

Criminal Division he wanted searched. Enclosed with the May 2005 acknowledgment letter, the

Criminal Division attached the two forms for the plaintiff to complete; (1) Privacy Act

Identification and Request Form and (2) Criminal Division's Privacy Act Systems of Records

From. Once completed by plaintiff, these forms would provide the additional information

needed by the FOIA/PA Unit to thoroughly process his request. Additionally, the plaintiff was

notified that his request had been assigned case number CRM-200500498P, however, request

7

CRM-200500498P would be closed and when the Criminal Division received the attached forms in completed form, the request would then be reopened under a different case number. Plaintiff was also notified in the letter of his administrative appeal rights should be treated the letter as a denial of his request. Hsu Decl. ¶ 5 and Exhibit 2.

27. By letter dated June 9, 2005, the plaintiff returned the "Privacy Act Identification and Request Form" and the "Criminal Division's Privacy Act Systems of Records From." He indicated on the forms the systems of records he wanted search and provided information about himself that would assist the Criminal Division in those searches. Hsu Decl. ¶ 6 and Exhibits 3 and 4.

28. By letter addressed to the plaintiff dated June 28, 2005, the Criminal Division acknowledged that it received from the plaintiff the "Privacy Act Identification and Request From" dated June 9, 2005, and the list of systems of records he wanted searched. The plaintiff's FOIA/PA request was reassigned case number CRM-200500658P. The plaintiff was further advised that the FOIA/PA Unit would conduct a search to determine what records the Criminal Division had that were within the scope of the request. Hsu Decl. ¶ 7 and Exhibit 5.

29. By a letter addressed to the Department of Justice, Office of Information and Privacy ("OIP") dated July 26, 2005, plaintiff sought an administrative appeal with OIP asserting that the FOIA/PA Unit did not respond to his request within the time limits established by the Freedom of Information and Privacy Acts. Hsu Decl. ¶ 8 and Exhibit 6.

30. By letter dated August 15, 2005, OIP acknowledged receipt of plaintiff's July26, 2005 letter seeking an administrative appeal. OIP notified plaintiff that it had contacted the Criminal Division and learned that the FOIA/PA Unit was still in the process of responding to his

8

request. The letter went on the state that OIP's function is limited to the review of those records

to which access is in fact denied. OIP advised plaintiff that it did not have the necessary

resources to conduct the records review to make an initial determination, and that OIP could not

act on the appeal until an initial determination had been made by the Criminal Division. Plaintiff

was also advised that he could file another appeal to OIP after the Criminal Division completed

its action in his request and the material was denied. Hsu Decl. ¶ 9 and Exhibit 7.

31. By a letter addressed to the plaintiff dated August 30, 2005, the FOIA/PA Unit

advised plaintiff that it had completed its search for relevant Criminal Division's records in his

name and located no records responsive to his request. Hsu Decl. ¶ 10 and Exhibit 8.

32. By letter dated September 15, 2005, addressed to OIP, plaintiff filed another

administrative appeal regarding the denial of his request (CRM-200500658P) for records in his

name. Hsu Decl. ¶ 11 and Exhibit 9.

33. By letter dated October 24, 2005, OIP acknowledged receipt of plaintiff's September

15, 2005 appeal, and assigned it appeal Number 05-2891. Plaintiff was advised that after

carefully considering his appeal, OIP had decided to affirm the Criminal Division's action in

request CRM-200500658P. Plaintiff was also advised of his right to seek judicial review of the

decision in accordance with 5 U.S.C. § 552 (a) (4) (B). Hsu Decl. ¶ 12 and Exhibit 10.

## V.    Federal Bureau of Prisons ("BOP")

34. On or about May 12, 2005, plaintiff's FOIA request dated April 19, 2005, was

received by the BOP's FOIA/PA Section in Washington, D.C. The request (2005-05147) was

forwarded to the BOP's South Central Regional Office (SCRO) for response. Plaintiff sought

copies of documents from the Federal Correctional Institution (FCI) in El Reno, Oklahoma, the

9

Federal Transfer Center (FTC) in Oklahoma City, and FCC Forrest City for "all ISM, SIS, and

SIA files", including his FOIA Exempt file. The request was interpreted as a request for all

records pertaining to him that were maintained in his Central and Medical Files, SIS records and

copies from the FOI Exempt section of his Cental File at his designated institution, FCC Forrest

City. Declaration of Karen Summers ("Summers Decl.") ¶ 4 and Attachment 1.

35. On May 18, 2005, FCC Forrest City staff were informed that plaintiff would be

directed to request review or copies of the releasable documents from his Central and Medical

Files. Staff were instructed to forward all FOI Exempt records maintained in plaintiff's Central

File, as well as records maintained by the SIS/SIA, to the SCRO for review and release

determination.[3]  Summers Decl. ¶ 5 and Attachment 2.

36. By letter dated May 19, 2005, plaintiff's request was accepted and acknowledged as

received by the SCRO. Plaintiff was informed that the majority of the records created by the

BOP at facilities where he was previously incarcerated, (i.e., FCI El Reno and FTC Oklahoma

City) are routinely forwarded to his unit team for incorporation into his Central File. Plaintiff

was further informed that if he was seeking copies of specific records other than those

maintained at his current institution, he should resubmit a request to the Office of General

Counsel in Washington, D. C. with additional information to identify specific records. Finally,

he was advised that he could request a review and/or copies of the releasable records (non "FOI

Exempt") from his Central and Medical Files at the local (institution) level. Summers Decl. ¶ 6

and Attachment 3.

---

[3] Attachment 1 contains a handwritten note from USP Beaumont staff indicating no
SIA/SIS records were located relevant to plaintiff's request. Summers Decl. ¶ 5.

37. On June 2, 2005, BOP staff provided plaintiff the opportunity to review and/or receive copies of his Central File records. Plaintiff signed a receipt indicating he was provided access to his Central File but did not request any copies. Summers Decl. ¶ 7 and Attachment 4.

38. On June 3, BOP staff provided plaintiff the opportunity to review and/or receive copies of his medical records. Plaintiff signed a receipt indicating he requested and received 49 copies of his Medical File. Summers Decl. ¶ 8 and Attachment 5.

39. By letter dated May 24, 2005, plaintiff was informed twenty two (22) responsive documents maintained in the "FOI Exempt" section of his Central File and/or investigative records were reviewed for release determination. Summers Decl. ¶ 9 and Attachment 6.

40. A review of the twenty two (22) exempt records revealed two (2) pages were releasable in full; seven (7) pages were released with certain information excised pursuant to Title 5 U.S.C. §§ 552a(b)(2),(7)(C), and/or (b)(7)(F); and thirteen (13) pages were withheld in their entirety. See Attachment 6. Summers Decl. ¶ 10.

42. Plaintiff was further informed that a total of thirteen (13) pages were withheld in their entirety (SIS Report regarding other inmates) pursuant to §§ 522(b)(7)(C) and (b)(7)(F) because it would constitute an unwarranted invasion of the personal privacy of other inmates and could endanger their physical safety. Summers Decl. ¶ 13 and Attachment 6.

43. Plaintiff was advised that if dissatisfied with the BOP response he could appeal to the Office of Information and Privacy (OIP) within 60 days. Summers Decl. ¶ 14 and Attachment 6.

44. By letter dated June 11, 2005, plaintiff appealed the BOP's decision to withhold information by claiming certain exemptions and/or by failing to provide any exemptions for certain records withheld. Summers Decl. ¶ 15 and Attachment 7.

11

45. By letter dated June 24, 2005, OIP acknowledged plaintiff's appeal and assigned Appeal Number 05-2101. Summers Decl. ¶ 16 and Attachment 8.

46. OIP's staff has informed the BOP that adjudication of the Appeal is currently pending. Summers Decl. ¶ 17.

**VI.    Internal Revenue Service ("IRS")**

47. On or about January 17, 2006, Heidi Peterson, Appeal Officer, Internal Revenue Service, Riverside Appeals Office was asked to determine whether the Appeals function had received any FOIA appeals filed by, or on behalf of, Jimmy Sharbutt. In addition Ms. Peterson was asked to conduct a search to determine whether any FOIA requests had been filed with the Service by, or on behalf of, Jimmy Sharbutt. Declaration of Heidi Peterson ("Peterson Decl.") ¶ 3.

48. The Appeals Centralized Database System ("ACDS") is the Appeals Division's computerized information system for case receipt, control and processing. A FOIA appeal may be searched in ACDS is by using the last name of the requester. Peterson Decl. ¶ 4.

49. Ms. Peterson searched the ACDS and her search produced no records of FOIA appeals filed by, or on behalf of, Mr. Sharbutt. Peterson Decl. ¶¶ 4, 5.

50. In addition to the review of the ACDS, Ms. Peterson searched the Service's Electronic Disclosure Information Management System ("EDIMS") using the taxpayer's last name to determine whether any FOIA requests had been filed by, or on behalf of, plaintiff. The search was performed by using "Sharbutt" as the name of the requester, and again as the name of the taxpayer. EDIMS is a computerized information system for inventory control and casework management of disclosure requests made to the Service's disclosure offices. The EDIMS search

12

revealed that no records of a FOIA request by, or on behalf of, plaintiff existed. Peterson Decl. ¶ 6.

51. Following the search of EDIMS, Ms. Peterson reviewed the Service's Internal Data Retrieval System ("IDRS") for information pertaining to taxpayers named "Jimmy Sharbutt." IDRS is a computerized information system that provides Service employees with access to certain taxpayer information. Service employees with access to IDRS can research the social security numbers of taxpayers using taxpayer's names. The search revealed social security numbers for three taxpayers having that name. With that information, Ms. Peterson searched EDIMS by social security number. However, the search again revealed that no FOIA requests have been submitted by, or on behalf of, plaintiff. Peterson Decl. ¶ 7.

## VII.   Federal Bureau of Investigation ("FBI")

### FBIHQ REQUEST

53. By letter dated April 19, 2005, plaintiff submitted a request to FBIHQ requesting any and all documents, records and information maintained by the FBI concerning himself. Declaration of David M. Hardy ("Hardy Decl.") ¶ 6 and Exhibit A.

54. By letter dated May 19, 2005, FBIHQ notified plaintiff that based upon the information furnished, a search of the automated indices to its central records system files located no records at FBIHQ responsive to his FOIA request. Plaintiff was also advised that the automated indices is an index to all records created since January 1, 1958, in security, applicant and administrative matters, as well as to all records created since January 1, 1973, in criminal matters. Additionally, plaintiff was advised that if he had reason to believe records responsive to his request exist prior to these dates, he needed to request another search. The FBI assigned

FOIPA number 1020837 to his request. Plaintiff was also advised of his right to file an administrative appeal with the Department of Justice, Office of Information and Privacy ("DOJ OIP"). Hardy Decl. ¶ 7 and Exhibit B.

55. By letter dated June 4, 2005, plaintiff filed an administrative appeal to the DOJ OIP regarding the FBI's "no record" response. Hardy Decl. ¶ 8 and Exhibit C.

56. By letter dated June 22, 2005, DOJ OIP acknowledged receipt of plaintiff's administrative appeal and assigned it Appeal Number 05-2053. Hardy Decl. ¶ 9 and Exhibit D.

57. By letter dated October 3, 2005, DOJ OIP advised plaintiff that after careful consideration of his appeal, and discussions between FBI and OIP personnel, OIP had decided to affirm the FBI's "no record" response for request number 1020837. OIP also advised plaintiff of his right to seek judicial review of this decision pursuant to the provisions of Title 5, United States Code, Section 552(a)(4)(b). Hardy Decl. ¶ 10 and Exhibit E.

## OKLAHOMA CITY REQUEST

58. By letter dated April 19, 2005, plaintiff submitted a FOIA request to the FBI OCFO requesting any and all documents, records and information maintained by the FBI concerning himself. Plaintiff also expressed his willingness to pay reasonable search and reproduction fees. Hardy Decl. ¶ 11 and Exhibit F.

59. By letter dated May 12, 2005, FBIHQ advised plaintiff that his request to the OCFO was forwarded to FBIHQ for processing. Plaintiff was also advised that based upon the information provided, a search of its central records system located no records at OCFO responsive to his FOIPA request. Plaintiff was also advised that the automated indices is an index to all records created since January 1, 1958, in security, applicant and administrative

14

matters, as well as to all records created since January 1, 1973, in criminal matters. Additionally, plaintiff was advised that if he had reason to believe records responsive to his request exist prior to these dates, he would need to request another search. The FBI assigned FOIPA number 1020378 to his request. Plaintiff was also advised of his right to file an administrative appeal with DOJ OIP. Hardy Decl. ¶ 12 and Exhibit G.

60. By letter dated June 9, 2005, plaintiff filed an administrative appeal with the DOJ OIP requesting an official review of FBIHQ's "no record" response to his request to the FBI's OCFO. Hardy Decl. ¶ 13 and Exhibit H.

61. By letter dated June 28, 2005, DOJ OIP acknowledged receipt of plaintiff's administrative appeal and assigned it Appeal Number 05-2088. Hardy Decl. ¶ 14 and Exhibit I.

62. By letter dated October 3, 2005, DOJ OIP advised plaintiff that after careful consideration and discussions between FBI and OIP personnel, OIP had decided to remand the FBI's action in regards to plaintiff's FBI OCFO request. Plaintiff was advised that the FBI had conducted a further search and located records responsive to his request, and would send the releaseable portions of these records directly to plaintiff. Plaintiff was also advised of his right to file a second administrative appeal to the DOJ OIP if he was dissatisfied with the FBI's ultimate action on the recently discovered records. Hardy Decl. ¶ 15 and Exhibit J

63. By letter dated January 13, 2006, plaintiff was advised by the FBI that pursuant to his request 2 pages were reviewed and 2 pages were released. Plaintiff was advised that excisions had been made to protect information from disclosure pursuant to exemptions (b)(6), (b)(7)(A), and (b)(7)(C) of 5, USC § 552 (Freedom of Information Act), and exemption (j)(2) of the Privacy Act of 1974, 5 U.S.C. § 552a. Plaintiff was also advised of his right to file an

15

administrative appeal with the DOJ OIP.  Hardy Decl. ¶ 16 and Exhibit K.

## USMS REFERRAL

64.  By letter dated September 19, 2005 in accordance with 28 C.F.R. § 16.4, the USMS referred 3 pages of material to FBIHQ for review and direct response to plaintiff.  The USMS also provided a copy of plaintiff's incoming request letter.  Hardy Decl. ¶ 17 and Exhibit L.

65.  By letter dated December 30, 2005, FBIHQ advised plaintiff that as a result of his request to the USMS, 3 pages were referred to the FBI.  Plaintiff was also advised that these 3 pages were reviewed resulting in the release of 3 pages containing excisions.  Plaintiff was further advised that these excisions had been made to protect information from disclosure pursuant to Exemption (b)(2) of 5, U.S.C. § 552 (Freedom of Information Act), and Exemption (j)(2) of the Privacy Act of 1974, 5 U.S.C. § 552a.  In addition, plaintiff was advised of his right to file an administrative appeal with the DOJ OIP.  Hardy Decl. ¶ 18 and Exhibit M.

66.  By letter dated January 23, 2006, plaintiff was advised that upon further consultation with the USMS, the FBI was releasing the 3 page document in its entirety.  Hardy Decl. ¶ 19 and Exhibit N.

Respectfully submitted,

KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

R. CRAIG LAWRENCE, D.C. BAR #171538
Assistant United States Attorney

WYNEVA JOHNSON, D.C. Bar #278515
Assistant United States Attorney

BRENDA C. WILLIAMS
Paralegal Specialist

17