# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

—————————————————————————

JIMMY SHARBUTT,                                    )
                                                   )
                        Plaintiff,                 )
                                                   )
        v.                                         )    Civil Action No. 05-2396 JGP
                                                   )
BUREAU OF ALCOHOL, TOBACCO, FIREARMS &             )
EXPLOSIVES, et al.,                                )
                                                   )
                        Defendants.                )
                                                   )
—————————————————————————

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Executive Office for United States Attorneys, through counsel, respectfully move this Court for partial summary judgment on the grounds that there are no material facts in genuine dispute and the defendant to which this motion relates is entitled to judgment as a matter of law.  Fed.R.Civ.P.56.[1]  In support of this motion, defendant respectfully submits the attached Memorandum of Points and Authorities, Statement of Material Facts not in Genuine Dispute. This motion is supported by the declaration of  John W. Kornmeier, Attorney Advisor, Freedom of Information/Privacy Act ("FOI/PA") Executive Office for United States Attorneys ("EOUSA").                .

Plaintiff will please take notice that any factual assertions contained in the accompanying declarations and other attachments in support of defendants' motion will be accepted by the

---

[1]  The claim against the Executive Office for United States Attorneys is addressed herein. The claims against the following components of the United States Department of  Justice; the Drug Enforcement Administration, the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco, Firearms & Explosives, the United States Marshals Service, Criminal Division Office of Enforcement Operations, the Federal Bureau of Prisons and the Internal Revenue Service has already been addressed in an earlier filing.

Court as true unless plaintiff controverts them with his own affidavit or other documentary

evidence.  See Neal v. Kelly, 963 F.2d 453 (D.C.Cir. 1992), and Local Rule 7.1.  As stated in

Fed.R.Civ.P.56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal
> knowledge, shall set forth such facts as would be admissible in
> evidence, and shall show affirmatively that the affiant is competent
> to testify to the matters stated therein.  Sworn or certified copies of
> all papers or parts thereof referred to in an affidavit shall be
> attached thereto or served therewith.  The court may permit
> affidavits to be supplemented or opposed by depositions, answers
> to interrogatories, or further affidavits.  When a motion for
> summary judgment is made and supported as provided in this rule,
> an adverse party may not rest upon the mere allegations or denials
> of the adverse party's pleading, but the adverse party's response, by
> affidavits or as otherwise provided in this rule, must set forth
> specific facts showing that there is a genuine issue for trial.  If the
> adverse party does not so respond, summary judgment, if
> appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).


Respectfully submitted,

/s/

_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney


/s/

_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


/s/

_____
WYNEVA JOHNSON, D.C. Bar #278515
Assistant United States Attorney


BRENDA C. WILLIAMS
Paralegal Specialist

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JIMMY SHARBUTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-2396 JGP |
| | ) |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT EXECUTIVE OFFICE FOR UNITED STATES ATTORNEY'S
MOTION FOR SUMMARY JUDGMENT**

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and

pertains to the processing of Plaintiff's FOIA requests to the Executive Office for United States

Attorneys ("EOUSA"). The defendant have complied fully with the requirements of FOIA in

responding to plaintiff's requests. There are two requests at issue in the case 05-1450 and 05-

1451. There are also three pages redacted that were referred to EOUSA by the United States

Marshals Service, i.e., 05-2813-R.

With regard to 05-1450, plaintiff has refused to pay his fee. Defendant submits that as

Plaintiff has failed to pay the fees required by EOUSA or narrow the scope of his request; thus,

Plaintiff has failed to exhaust his administrative remedies, and the Court lacks subject matter

jurisdiction over this claim. With regard to 05-1451, EOUSA conducted an adequate search but

found no records. With regard to the records referred by the United States Marshals Service, 05-

2813-R, the redactions were properly made to protect information pursuant to (j)(2) of the PA

and exemption (b)(7)(C) of the FOIA.

## I. STATEMENT OF FACTS

Defendants incorporate herein as its Statement of Facts the Statement of Material Facts Not In Genuine Dispute attached hereto.

## II. ARGUMENT

**A.     Standard for Summary Judgment**

Where no genuine dispute exists as to any material fact, a case should be decided on summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  Id. at 247.  "The burden on the moving party may be discharged by 'showing'—that is, pointing out to the [Court]—that there is an absence of evidence to support the non-moving party's case."  Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment, the plaintiff must present some objective evidence that would enable the court to find he is entitled to relief.  In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In Anderson, the Supreme Court explained under what circumstances summary judgment is appropriate:

2

> If the evidence is merely colorable, . . . or is not significantly
> probative, . . . summary judgment may be granted . . . [T]he mere
> existence of a scintilla of evidence in support of the plaintiff's
> position will be insufficient; there must be evidence on which the
> jury could reasonably find for the plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir.

1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury

to find" in its favor).  In Celotex, the Supreme Court further instructed that the "[s]ummary

judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an

integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and

inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. at 327 (quoting

Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are

typically decided on motions for summary judgment.[2]  See Cappabianca v. Commissioner, U.S.

Customs Service, 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are

properly identified, FOIA cases should be handled on motions for summary judgment") (citing

Miscavige v. I.R.S., 2 F.3d 366, 368 (11th Cir. 1993)).  In a FOIA suit, an agency is entitled to

summary judgement once it demonstrates that no material facts are in dispute and that each

document that falls within the class requested either has been produced, is unidentifiable, or is

exempt from disclosure.  Students Against Genocide v. Department of State, 257 F.3d 828, 833

(D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

---

[2]  For purposes of summary judgment, an agency's decision to withhold information from
a FOIA requester is subject to de novo review by the courts.  Hayden v. National Sec.
Agency/Central Sec. Service, 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937
(1980).

**B.    Plaintiff Has Failed To Exhaust His Administrative Remedies With Regard To Request No. 05-1450**

It is well-established in administrative law that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." McKart v. U.S., 395 U.S. 185, 193 (1969).  Exhaustion of such administrative remedies is required under FOIA before a party can seek judicial review.  Dettmann v. U.S. Dept. of Justice, 802 F.2d 1472, 1477 (D.C.Cir. 1986).  A FOIA requester is deemed to have failed to exhaust administrative remedies whenever the requester fails to comply with the administrative procedures set forth under FOIA, including:  (1) providing the required proof of identity, Summers v. U.S. Dept. of Justice, 999 F.2d 570, 572-73 (D.C. Cir. 1993); (2) reasonably describing the records sought, Gillin v. I.R.S., 980 F.2d 819, 822-23 (1st Cir. 1992);  (3) complying with fee requirements, Trueblood v. U.S. Dept. of Treasury, I.R.S., 943 F. Supp. 64, 68 (D.D.C. 1996); and (4) administratively appealing a denial of records, Oglesby v. U.S. Dept. of Army, 920 F.2d 57 (D.C.Cir. 1990).  Where a FOIA plaintiff attempts to obtain judicial review without having first fully exhausted his administrative remedies, his lawsuit is subject to dismissal for lack of subject matter jurisdiction.  Id.

FOIA requires agencies to establish fee schedules for the time taken to search for records and for the cost of copying records.  See 5 U.S.C. §552(a)(4)(A)(i); 28 C.F.R. § 16.11 (DOJ regulation implementing this provision).  Agencies may request advance payment of fees upon a determination that the fees will exceed $250.00.  See 5 U.S.C. §552(a)(4)(A)(v).  In such cases, the agency may insist on advance payment of fees "before beginning to process the request."  28 C.F.R. 16.11(i)(2).  An agency may require payment of fees even if the FOIA request has become

the subject of litigation.  See, e.g., Trueblood v. U.S. Dept. of Treasury, I.R.S., 943 F. Supp. 64,

68 (D.D.C. 1996) (failure to pay fees is a jurisdictional defense that can be raised at any time);

see also Pollack v. Department of Justice, 49 F.3d 115, 119-20 (4th Cir. 1995).

 As demonstrated below, plaintiff has failed to exhaust his administrative remedies with

respect to EOUSA.

 Pursuant to the requirements of the FOIA, DOJ has promulgated comprehensive

regulations, set forth at 28 C.F.R. §§ 16.1 *et seq*., governing the procedures requesters must

follow in making FOIA requests to DOJ components, as well as procedures components must

follow in responding to such requests.  See 5 U.S.C. § 552(a)(1)(A).

 Under DOJ's regulations, FOIA requests "should be sent" to the DOJ component

maintaining the requested records, at the "component's central FOIA office."  28 C.F.R. §

16.3(a).  Requesters who are unsure of the components to which their requests should be sent are

directed to write to the Justice Management Division ("JMD") for assistance.  Id.  Under DOJ

regulations a "request will be considered received as of the date it is received by the proper

component's FOIA office."  Id.; see also Brumley, 767 F.2d at 445.  Once a FOIA request is

properly received, the FOIA requires that the agency (or component thereof) respond to that

request within 30 days.  See 5 U.S.C. § 552(a)(6)(i); 28 C.F.R. § 16.6(b). A requester may file

when he/she is unhappy with the agency's determination or the agency has not responded within

the statutorily established deadlines.

 By letter dated March 21, 2006, EOUSA notified plaintiff that it had determined that the

fees were at least $345.00 and required an advance payment.  Kornmeier Decl. ¶ 11.  EOUSA

also gave plaintiff another opportunity to reformulate his request to reduce fees.  Id.  EOUSA

told plaintiff that in accordance with 28 C.F.R. § 16.11(i), his request is not considered received until it received a response from him and that unless it heard from him in thirty days of the date of the letter, the matter would be closed.  Id ¶ and Exhibit F.

By refusing to comply with EOUSA's regulations regarding advanced payment of fees, plaintiff failed to exhaust his administrative remedies.  Mr. Sharbutt did not send the requested fee within the required thirty day time period nor did he respond with a reply to reformulate his request to reduce fees.  EOUSA is accordingly closing request 05-1450.[3]  Kornmeier Decl. ¶ 12.

## C.    EOUSA's Search Was Adequate With Regard To Request No. 05-1451

In responding to a FOIA request an agency is under a duty to conduct no more than a reasonable search for responsive records.  Ogelsby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Cleary, Gottlieb, Steen & Hamilton v. Department of Health and Human Services, 844 F.Supp. 770, 776 (D.D.C., 1993).

The search standards under the FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located.  Nation Magazine, Washington Bureau v. U.S. Customs Service, 71 F.3d 885, 892 n.7 (D.C.Cir. 1995).  It has been held that "the search need only be reasonable; it does not have to exhaustive."  Miller v. U.S. Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985) citing, National Cable Television Ass'n, Inc. v. F.C.C., 479 F.2d 183, 186 (D.C.Cir. 1973).  As a result, an agency under the FOIA is not required to search every

---

[3] EOUSA recently received a communication from plaintiff asking if it were possible to establish some type of payment plan to pay the fee over time.  There is no provision in the regulations for payment plans and EOUSA is not set up to administer such plans.  EOUSA is so informing plaintiff of this, but is also letting plaintiff know that if he does decide to pay the fee, EOUSA will re-open his file and assign a new request number, process his request, and release all disclosable documents to him.  Kornmeier Decl. ¶ 12.

division or field office in response to a FOIA request when responsive documents are likely to be

located in one place.  Marks v. U.S. (Dept. of Justice), 578 F.2d 261, 263 (9th Cir. 1978).  The

agency is not obligated to perform an "open-ended, broad based, and ill-defined" search of every

division and office.  See, Marrera v. U.S. Dept. of Justice, 622 F.Supp. 51, 54 (D.D.C., 1985).

Even when a requested document indisputably exists or once existed, summary judgment

will not be defeated by an unsuccessful search for the document so long as the search was

diligent.  Nation Magazine, 71 F.3d at 892 n.7.  Additionally, the mere fact that a document once

existed does not mean that it now exists; nor does the fact that an agency created a document

necessarily imply that the agency has retained it.  Maynard v. C.I.A., 986 F.2d 547, (1st Cir.

1993).  Simply stated, the adequacy of the search is "dependent upon the circumstances of the

case."  Truitt v. Department of State, 897 F.2d 540, 542 (D.C. Cir. 1990).

The search for records under 05-1451 found no records.  As noted in the declaration of

Joe W. Higginbotham.

> On June 8, 2005, the agency went to the lead legal assistant -
> Criminal Division and searched the Legal Information Network
> System ("LIONS") database.  LIONS is the case
> management/tracking system used by USAOs to record and
> maintain up-to-date information on cases and matters opened by
> Assistant U.S. Attorneys ("AUSAs") and to produce a variety of
> reports on that information.  PROMIS ("Prosecutors Management
> Information System) is the precursor to LIONS.  Both LIONS and
> PROMIS track and record civil and criminal case files in the
> USAO/DSC.

.

Higginbotham Decl. ¶ 6.

The legal assistant searched the LIONS database and did not find any entries for Mr.

Sharbutt in the LIONS database, and then conducted a more extensive search in an abundance of

caution.  Higginbotham Decl. ¶ 7.

> On June 8, 2005, the legal assistant contacted Mr. Higginbotham and
> reported she searched LIONS and PROMIS and did not find any evidence
> of existence of records pertaining to Mr. Sharbutt.  The legal assistant also
> conducted a manual search of the index card system which tracked records
> and cases files prior to the creation of LIONS and PROMIS and did not
> find any evidence of existence of records pertaining to plaintiff.
>
> The office maintains a separate log for records shipped to the Federal
> Records Center, and it is maintained by the year that a case is closed.  The
> search of LIONS, and the legal assistant's search of LIONS, PROMIS,
> records of the system in use before July 18, 1997, and index card system
> did not indicate that any records pertaining to plaintiff existed; therefore,
> there were no reason to search the Federal Records Center log to see if any
> had been closed.

Higginbotham Decl. ¶¶ 8, 9.

Mr. Higginbotham notified EOUSA, on June 8, 2005, to inform them that he could not

locate any records responsive to plaintiff's request.  Higginbotham Decl. ¶ 10.  Mr.

Higginbotham noted that "the only way to ascertain if there are now, or if there ever were, any

records is by utilizing LIONS, PROMIS, and the criminal and civil card indexes."  Id. at ¶ 11.

Mr. Higginbotham concluded that there were no other methods of searching which would lead to

records pertaining to plaintiff.  If any records had existed, the lead criminal legal assistant and

Mr. Higginbotham would have located them as a result of the searches conducted on June 8,

2005.  Id.

On January 4, 2006, Mr. Higginbotham conducted another search with the lead criminal

legal assistant, for records responsive to plaintiff's request by searching LIONS, PROMIS and

the criminal and civil card indexes, again with negative results.  He also sent an e-mail to the

criminal and civil division requesting another review of files in regard to plaintiff.  No one

8

responded that records were found in the system of files.  Higginbotham Decl. ¶ 12.

Because EOUSA performed a thorough search reasonably calculated to find all responsive documents, summary judgment is appropriate.  Kornmeier Decl. ¶ 14 and Exhibit G.

**D.    Defendant EOUSA Has  Submitted Proper "Vaughn" Indices**

In moving for summary judgment in a FOIA case, agencies must establish a proper basis for their withholding of responsive documents.  "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA Plaintiffs."  Judicial Watch, Inc. v. U.S. Dept. of Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C., 1998).  These declarations or affidavits (singly or collectively) are often referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564 (1974).  There is no set formula for a Vaughn index.  "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form."  Kay v. F.C.C., 976 F.Supp. 23, 35 (D.D.C., 1997).  "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege."  Delaney, Midgail & Young, Chartered v. I.R.S., 826 F.2d 124, 128 (D.C.Cir. 1987).  See also Keys v. U.S. Dept. of Justice, 830 F.2d 337, 349 (D.C.Cir. 1987); Hinton v. Department of Justice, 844 F.2d 126, 129 (3rd Cir. 1988).[4]

---

[4] "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." Id.  "The degree of specificity of itemization, justification, and correlation required in a particular case will, however, depend on the nature of the document at issue and the particular exemption asserted." Information Acquisition Corp. v. Department of Justice, 444 F.Supp. 458, 462 (D.D.C., 1978).

The <u>Vaughn</u> Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption.  <u>See</u>  <u>Citizens Com'n on Human Rights v. Food and Drug Admin.</u>, 45 F.3d 1325, 1326 (9th Cir. 1995).  "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA."  <u>Founding Church of Scientology of Washington, D.C., Inc. v. Bell</u>, 603 F.2d 945, 949 (D.C.Cir. 1979).

Here, EOUSA has submitted supporting declarations and/or separate <u>Vaughn</u> index in support of the exemptions taken.  The declaration is prepared by an individual familiar with the handling of the direct or referred request.

The declaration submitted in support of this motion meets the requirements of <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert</u>. <u>denied</u>, 415 U.S. 977, 94 S.Ct. 1564 (1974), and provides the Court with the requisite basis to grant Defendants' motion.

**E.**    **The Records Plaintiff Requested (05-2813-R) Are Exempt From the Privacy Act's Disclosure Provisions**

The contents of Mr. Sharbutt's criminal case file are exempt from the Privacy Act's disclosure provisions.  Subsection (j)(2) of the Privacy Act allows an agency by regulation, to exempt from mandatory disclosure:

> records maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of ...(B) information

10

compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a (j)(2).

Here, because Mr. Sharbutt's records were part of the criminal case files of the USAO for the Northern District of Oklahoma, and were, therefore, compiled for law enforcement purposes, it was determined that the records withheld, which were responsive to Mr. Sharbutt's request, were not disclosable under the Privacy Act. Kornmeier Decl. ¶ 17. Because all of the records located by EOUSA in response to Mr. Sharbutt's FOIA request pertain to his criminal investigation and prosecution and are thus maintained in the systems of records, Justice/USA-007, the records are exempt from the access provisions of the PA by regulation. Id. Although the records at issue are exempt under the PA, EOUSA processed them under the FOIA as well. Id.

**F.      EOUSA Properly Applied Exemption (b)(7)(C) For The Records Referred By Request No. 05-2813-R (Referral From United States Marshals Service)**

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The Supreme Court has affirmed the broad scope of Exemption 7(C) in National Archives and Records Admin. v. Favish, 541 U.S. 157, 124 S. Ct. 1570 (2004) (upholding application of Exemption 7(C) and recognizing substantial privacy interests of federal and non-federal law enforcement officer and other government employees). The records of EOUSA are compiled for law enforcement purposes.

11

Kornmeier ¶ 19 (discussing the agency's law enforcement mission).  When a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies."  Keys v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987), citing Pratt v. Webster, 673 F.2d 408, 418 (D.C.Cir. 1982).  A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'"  Keys, 830 F.2d at 340, quoting Pratt v. Webster, 673 F.2d 408, 421 (D.C. Cir. 1982).

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files.  See, e.g., Favish, S. Ct. at 1580-82; U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 776-80 (1989).

The Supreme Court has made clear that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' Department of Air Force v. Rose, 425 U.S. 352, 372 (1976), rather than on the particular purpose for which the document is being requested."  Reporter's Committee, 489 U.S. at 772 (internal quotation marks omitted).  Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve."  Id. at 775.  That public interest is to "shed[] light on an agency's performance of its statutory duties."  Id. at 772.  The plaintiff bears the burden of establishing

12

that the "public interest in disclosure is both significant and compelling in order to overcome

legitimate privacy interests." Perrone v. F.B.I., 908 F. Supp. 24, 26 (D.D.C. 1995), citing Senate

of the Com. of Puerto Rico on Behalf of Judiciary Committee v. Department of Justice, 823 F.2d

574, 588 (D.C.Cir. 1987).

Significantly, it is the "interest of the general public and not that of the private litigant"

that matters. Brown v. Federal Bureau of Investigation, 658 F.2d 71, 75 (2d Cir. 1981). "[T]he

only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens'

right to be informed about what their government is up to.'" Davis v. Department of Justice, 968

F.2d 1276, 1282  (D.C. Cir. 1992) (quoting Reporters Committee, 489 U.S. at 773 (internal

quotation marks omitted).

Further, courts have explicitly recognized that the privacy interests of third parties

mentioned in law enforcement files are  "substantial," while "[t]he public interest in disclosure

(of third-party identities)is not just less substantial, it is insubstantial." SafeCard Services, Inc. v.

S.E.C., 926 F.2d 1197, 1205 (D.C.Cir. 1991).  Our court of appeals has held "categorically" that

"unless access to names and addresses of private individuals appearing in files within the ambit

of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency

is engaged in illegal activity, such information is exempt from disclosure." SafeCard Services,

926 F.2d at 1206.

Exemption 7(C) consistently has been held to protect the identities of suspects and other

persons of investigatory interest who are identified in agency records in connection with law

enforcement investigations. Reporters Committee, 489 U.S. at, 780); Computer Professionals for

Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting "'strong

interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity,'" quoting Dunkelberger v. Department of Justice, 906 F.2d 779, 781 (D.C.Cir. 1990). Indeed, an agency may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity. Reporters Committee, 489 U.S. at 780; Nation Magazine, Washington Bureau v. U.S. Customs Service, 71 F.3d 885, 893, 895-96 (D.C.Cir. 1995); SafeCard Services, 926 F.2d at 1206.

Likewise, the names of law enforcement officers who work on criminal investigations have traditionally been protected against release by Exemption 7(C). Davis, 968 F.2d at 1281; Lesar v. U.S. Dept. of Justice, 636 F.2d 472, 487-88 (D.C.Cir. 1980). Review of the declaration and Vaughn information shows that many of the excisions made by EOUSA relate to protecting the identity of agents and employees of the agencies. Kornmeier Decl. ¶ 21. Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. Computer Professionals for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dept. of Justice, 683 F. Supp. 273, 275 (D.D.C., 1987). The Vaughn index provided reflects clearly that Exemption 7(C) was appropriately applied in this case to protect names and personal information on individuals.

EOUSA withheld only the following information on the three documents it released in part; all other information was released.

| Date of Doc. | Number of Pages | Information Withheld |
|---|---|---|
| 10/23//02 | 1 | One name (of a law enforcement officer) |
| No Date | 1 | two names (of law enforcement officers) |

14

No Date        1                                two names (of law enforcement officers)

Kornmeier Decl. ¶ 18.

EOUSA applied Exemption 7(C) which exempts from mandatory release records or information compiled for law enforcement purposes if such release could reasonably be expected to constitute an unwarranted invasion of personal privacy. All information at issue in this case was compiled for law enforcement purposes. Indeed, it was compiled to support the prosecution in a criminal case. Kornmeier Decl. ¶ 19.

EOUSA applied Exemption 7(C) to withhold the identities of and personal information about third party individuals, the release of which could subject such persons to an unwarranted invasion of their personal privacy. Release of the identifying information could result in unwanted and even unlawful efforts to gain further access to such persons or to personal information about them, or cause them harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences arising from their connection to the case, all to their detriment. Kornmeier Decl. ¶ 20.

This Exemption applies to withheld identities of individuals such as special federal agents, government employees, and local law enforcement personnel who participated in the investigation and prosecution of this case. Individual duties and assignments are not public and such publicity as would likely arise from disclosure would seriously impede, if not totally jeopardize, law enforcement effectiveness in subsequent cases, even subjecting such individuals to harassment or harm. These persons have protected privacy interests in the conduct of law enforcement investigations. Specifically, the EOUSA applies this exemption to the three pages released in part with only the names of law enforcement officers redacted. Such a redaction falls

four square within the protection provided by this exemption for law enforcement officers.

Kornmeier Decl. ¶ 21.

EOUSA determined that there is no public interest in the release of this information because dissemination of the information would not help explain the activities and operations of the EOUSA. No public interest would counterbalance the individuals' privacy right in the information withheld under this exemption. Indeed, plaintiff provided the office with no authorizations or consents from any third party individual to release otherwise personal privacy protected materials. Kornmeier Decl. ¶ 22.

**G.    Segregability**

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue <u>sua sponte</u>." <u>Trans-Pacific Policing Agreement v. U.S. Customs Service</u>, 177 F.3d 1022, 1028 (D.C. Cir. 1999). The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); <u>Mead Data Central, Inc. v. U.S. Dept. of Air Force</u>, 566 F.2d 242, 260 (D.C.Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements". <u>Mead Data</u>, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. <u>Id</u>. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated.

16

<u>Armstrong v. Executive Office of the President</u>, 97 F.3d 575, 578-79 (D.C.Cir. 1996).

Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." <u>Mead Data</u>, 566 F.2d at 261, n.55.

      EOUSA has produced all segregable information contained in their respective file records. To demonstrate that all reasonably segregable material has been released, the agency must show "with reasonable specificity" why a document cannot be further segregated. <u>Armstrong v. Executive Office of the President</u>, 97 F.3d 575, 578-79 (D.C.Cir. 1996).

Here, defendant found that no information was segregable from exemption information. <u>See</u> Kornmeier Decl. ¶ 23 and <u>Vaughn</u> Index submitted therewith. Because no non-exempt information was found in relation to documents withheld in full, it was not possible to further segregate. <u>Id</u>.

17

### III.  **CONCLUSION**

Defendant Executive Office for United States Attorneys has demonstrated that they responded properly to plaintiff's FOIA request.  Accordingly, defendant respectfully requests that its Motion for Partial Summary Judgment be granted.

Respectfully submitted,

/s/

_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney


/s/

_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


/s/

_____
WYNEVA JOHNSON, D.C. Bar #278515
Assistant United States Attorney


BRENDA C. WILLIAMS
Paralegal Specialist

18

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this <u>24th</u> day of April, 2006, that a copy of the foregoing was filed

and served by First-Class mail, postage prepaid to:

Jimmy Sharbutt
#09112-062
F.C.C.
Box 3000 (MEDIUM)
Forrest City, Arkansas 72366

/s/
_____
WYNEVA JOHNSON
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W., E-4106
Washington, D.C.  20530