# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                        :
JIMMY SHARBUTT,                         :
                                        :
            Plaintiff,                  :
                                        :
      v.                                :        Civil Action No. 05-2396 (JGP)
                                        :
BUREAU OF ALCOHOL, TOBACCO,             :
FIREARMS & EXPLOSIVES, *et al.*,               :
                                        :
            Defendants.                 :
_____:

## MEMORANDUM  OPINION and ORDER

This matter is before the Court on plaintiff's and defendants' motions for partial summary judgment.[1]  Having considered the motions, the parties' oppositions, and the record of this case, the Court will grant both motions in part, and direct defendants to file a renewed summary judgment motion.

## I.  BACKGROUND

Plaintiff brings this action pursuant to the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552.  He alleges that defendants have failed to produce timely and in full all the records he requested.

### A.  *Bureau of Alcohol, Tobacco, Firearms and Explosives*

The Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE") received plaintiff's FOIA request, assigned Request No. 05-1382, on July 25, 2005.  Graham Decl. ¶ 6 &

_____

[1]        On April 24, 2006, defendants filed a separate motion for partial summary judgment pertaining to the Executive Office for United States Attorney's response to plaintiff's FOIA request.  The Court issued an Order on April 25, 2006 advising plaintiff of his obligation to file an opposition or other response to the motion.  The Order notified plaintiff that, if he failed to respond by May 31, 2006, the Court would treat the matter as conceded.  To date, plaintiff has filed neither an opposition nor a request for more time to do so.  Accordingly, the Court will grant defendants' motion for partial summary judgment [Dkt. #26] as conceded.  This Memorandum Opinion addresses defendants' first motion [Dkt. #23] pertaining to the other entities' responses to plaintiff's many FOIA requests.

Ex. D (July 26, 2005 letter from A. Sands, Disclosure Assistant).[2]  Plaintiff requested "a copy of any and all documents, records and information that any part of [BATFE] has or had in its possession that is in any way connected to, related to, or even remotely in reference to [plaintiff's] name."  *Id.*, Ex. C (July 16, 2005 FOIA request).  The BATFE granted plaintiff's request in part.  *Id.* ¶ 8 & Ex. E (August 16, 2005 letter from J.M. Price, Disclosure Specialist).  The agency withheld certain records or portions of records pursuant to FOIA Exemptions 2, 3, and 7(C).  *Id.*  Plaintiff appealed this decision to the Justice Department's Office of Information and Privacy ("OIP"), and the OIP affirmed.  *Id.* ¶¶ 9-10 & Ex. F (September 10, 2005 letter to OIP), Ex. G (September 23, 2005 letter from P. Jones, Chief, Administrative Staff, OIP, regarding Appeal No. 05-2813); Compl. at 2.

### B.   United States Marshals Service

In his April 19, 2005 FOIA request, assigned Request No. 2005USMS8368, plaintiff sought records about himself that may be maintained in the "Tulsa & Oklahoma City and El Reno, OK districts and Forrest City, AR" offices of the United States Marshals Service ("USMS").  Bordley Decl. ¶ 2 & Ex. A (FOIA Request), Ex. B (May 13, 2005 letter from A.D. Cunningham, Acting FOI/PA Officer, Office of General Counsel, USMS).[3]  While the USMS' first search yielded no responsive records, a second search yielded 55 pages of records at the USMS' office in the Northern District of Oklahoma.  *Id.* ¶¶ 4-5, 7, 9-10.  Of these 55 pages, the

---

[2]     Defendants submit the declaration of Averill P. Graham, Chief, Disclosure Division, BATFE.  Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion for Partial Summary Judgment ("Defs.' Mot."), Graham Decl. ¶ 1.  In her official capacity, she receives, reviews, processes, and initiates searches for records responsive to FOIA requests to the BATFE.  *Id.*  She supervises the determination of what records should be disclosed.  *Id.*  Ms. Graham personally is familiar with the processing of and response to plaintiff's request.  *Id.* ¶ 3.

[3]     Defendants submit the declaration of William E. Bordley, Associate General Counsel and Freedom of Information/Privacy Act Officer, of the USMS, assigned to its Arlington, Virginia headquarters.  Defs.' Mot., Bordley Decl. ¶ 1.  He is responsible for processing FOIA requests to the USMS, and thus is familiar with the agency's procedures and information maintained in USMS records and files.  *Id.*

USMS released 33 pages in full, released 15 pages in part, referred three pages to the Federal

Bureau of Investigation, and referred four pages to the Executive Office for United States

Attorneys.  *Id.* ¶ 11 & Ex. F (September 19, 2005 letter from W.E. Bordley).

### C.   Federal Bureau of Investigation

Plaintiff submitted two FOIA requests to the Federal Bureau of Investigation ("FBI") on

April 19, 2005, both seeking records about himself.  *See* Compl. at 4 (Count IV).  He sent the

first request, assigned Request No. 1020837-000, to the FBI's Washington, DC Headquarters

("FBIHQ").  Hardy Decl. ¶ 7 & Ex. B (May 19, 2005 letter from D.M. Hardy, Section Chief,

Record/Information Dissemination Section, Records Management Division, FBIHQ).[4]  FBIHQ

notified plaintiff that a search of its automated indices to the central records system yielded no

responsive records at FBIHQ.  *Id.* ¶ 7.  The OIP affirmed this decision on plaintiff's

administrative appeal.  *Id.* ¶¶ 8-10 & Ex. E (October 3, 2005 letter from R.L. Huff, Co-Director,

OIP).

Plaintiff directed his second FOIA request to the Special Agent in Charge of the FBI's

Oklahoma City Field Office ("OCFO").  Hardy Decl. ¶ 11 & Ex. F (April 19, 2005 FOIA

request).  Pursuant to FBI policy, the OCFO forwarded his request to the FBIHQ for processing.

*Id.* ¶ 12.  Again, FBIHQ notified plaintiff that its search yielded no records responsive at OCFO

to this second request, which had been assigned Request No. 1020378-000.  *Id.*, Ex. G (May 12,

2005 letter from D.M. Hardy).   Plaintiff filed an administrative appeal to the OIP, which

---

[4]     Defendants submit the declaration of David M. Hardy, Section Chief of the Record/Information
Dissemination Section, Records Management Division, FBIHQ.  Defs.' Mot., Hardy Decl. ¶ 1.  He supervises the
employees whose "collective mission is to effectively plan, develop, direct and manage response to requests for
access to FBI records and information pursuant to the FOIA."  *Id.* ¶ 2.  He is familiar with FBI policies and
procedures for handling FOIA requests, and personally is aware of the treatment of plaintiff's FOIA request.  *Id.* ¶¶
2-3.

remanded the request for further action.  *Id.* ¶ 15 & Ex. J (October 3, 2005 letter from R.L. Huff, Co-Director, OIP).

On remand, after a further search, the FBI located two pages of records and released them to plaintiff after having redacted certain under Exemptions 6, 7(A), and 7(C).  *Id.* ¶ 16 & Ex. K (January 13, 2006 letter from D.M. Hardy).

The United States Marshals Service referred three pages of records to FBIHQ on September 19, 2005.  Hardy Decl. ¶¶ 17-18 & Ex. L (September 19, 2005 Memorandum).  Although FBIHQ initially released redacted versions of these records, ultimately FBIHQ released them in full.  *Id.* ¶¶18-19 & Ex. N (January 23, 2006 cover letter from D.M. Hardy with attachment).

### D.   Criminal Division, United States Department of Justice

Plaintiff submitted a perfected request for information about himself to the Criminal Division on June 9, 2005.  Hsu Decl. ¶ 6 & Ex. 3 (Privacy Act Identification and Request Form and Criminal Division's List of Systems of Records Form).[5]   After having searched the systems of records indicated in the perfected request, which had been assigned Request No. CRM-200500658P, the Criminal Division notified plaintiff that no records were located.  *Id.* ¶ 10 & Ex. 8 (August 30, 2005 letter from T.J. McIntyre, Chief, Freedom of Information/Privacy Act Unit, Criminal Division, DOJ).  Plaintiff filed an administrative appeal to the OIP, and OIP affirmed the Criminal Division's decision.  *Id.* ¶¶ 11-12 & Ex. 9 (September 15, 2005 FOIA Appeal), Ex. 10 (October 24, 2005 letter from D.J. Metcalfe, Director, OIP).

### E.   Federal Bureau of Prisons

---

[5]      Defendants submit the declaration of Kathy Hsu, Litigation Attorney, Freedom of Information/Privacy Act Unit, Criminal Division, DOJ.  Defs.' Mot., Hsu Decl. ¶ 1.  In this capacity, Ms. Hsu reviews lawsuits filed pursuant to the FOIA and assists the Assistant United States Attorneys litigating these cases.  *Id.* ¶ 2.  She reviews "processing files that have been compiled by the paralegal processors and reviewed by supervisory paralegals and/or by the FOIA/PA Chief in responding to FOIA/PA requests received by the Unit."  *Id.*  Her declaration is based on information acquired through the performance of official duties.  *Id.* ¶ 3.

Plaintiff submitted a request for information about himself to the Washington, DC headquarters office of the Federal Bureau of Prisons ("BOP").  Summers Decl. ¶ 4 & Attach. 1 (April 19, 2005 FOIA Request).[6]  He asked that BOP "search El Reno, OK; Ok City, OK and Forrest City, AR MED and produce all ISM and SIS and SIA files including [his] FOIA EXEMPT file."  *Id.*, Attach. 1.  BOP interpreted the request, assigned Request No. 2005-05147, "as a request for all records pertaining to [plaintiff] that were maintained in his Central and Medical Files, SIS records and copies from the FOI Exempt section of his Central File at his designated institution, FCC Forrest City," and forwarded the request to the South Central Regional Office for a response.  *Id.* ¶ 4.

BOP responded to plaintiff's request by letter dated May 19, 2005.  Summers Decl. ¶ 6. Plaintiff was instructed to submit his request for copies of records maintained in his Central and Medical Files to staff at the institution where he currently is incarcerated.  *Id.*, Attach. 3 (May 19, 2005 letter from M.D. Hood, Regional Counsel).  If he sought copies of records other than those maintained in these files, plaintiff was to resubmit his request to the BOP's Office of General Counsel.  *Id.*  Insofar as plaintiff sought access to the Inmate Systems Management (ISM) file, that request, too, was to be directed to institution staff.  *Id.*  The agency was to take further review of documents maintained in the "FOI Exempt" section of the Central File.  *Id.*

The BOP located 22 pages of records maintained in the "FOI Exempt" section of plaintiff's central file.  Summers Decl. ¶ 9 & Attach. 6 (May 24, 2005 letter from M.D. Hood). Of these 22 pages, the BOP released two pages in full, released seven pages in part after redacting certain information under Exemptions 2, 7(C) and 7(F), and withheld 13 pages in full.

---

[6]     Defendants submit the declaration of Karen Summers, a Paralegal Specialist at BOP's South Central Regional Office in Dallas, Texas.  Defs.' Mot., Summers Decl. ¶ 1.  In this capacity, Ms. Summers is familiar with and has access to records maintained in the ordinary course of BOP's business, "including, but not limited to, an inmate's medical and central file, investigative records, and the BOP's SENTRY computer database."  *Id.* ¶ 2.  She makes this declaration after having relevant BOP records pertaining to plaintiff.  *Id.* ¶ 3.

*Id.* ¶ 10 & Attach. 6.  Plaintiff appealed this decision to the OIP.  *Id.* ¶ 15-16 & Attach. 7 (June

11, 2005 Appeal).  OIP acknowledged receipt of the appeal, and assigned it Appeal No. 05-2101.

*Id.*, Attach. 8 (June 24, 2005 letter from P. Jones, Chief, Administrative Staff, OIP).  The record

did not reflect the outcome of the administrative appeal.

### F.  *Drug Enforcement Administration*

In his FOIA request to the Drug Enforcement Administration ("DEA"), plaintiff sought

"all Criminal Investigatory & Forfeiture records compiled from the Tulsa & Oklahoma City, OK

area" about himself.  Wassom Decl., ¶ 6 & Ex. A (April 19, 2005 FOIA Request).[7]  The DEA

construed the request, assigned Request No. 05-1035-P, as one for criminal investigation records

about plaintiff.  *Id.* ¶ 6.  Its initial search yielded no responsive records.  *Id.* ¶ 9 & Ex. D (July 13,

2005 letter from K.L. Myrick, Chief, Operations Unit, FOI/Records Management Section).  On

administrative appeal, the OIP affirmed the DEA's "no records" response.  *Id.* ¶ 13 & Ex. H

(September 19, 2005 letter from R.L. Huff, Co-Director, OIP regarding Appeal No. 05-2453).

### G.  *Internal Revenue Service*

Plaintiff alleges that he submitted a FOIA request to the Internal Revenue Service

("IRS") on April 19, 2005, and that the IRS failed to respond.  Compl. at 6 (Count VIII).  He

further alleges that he sent an appeal to OIP, and received a letter from the IRS, Fresno Appeals

Office, denying his appeal as untimely.  *Id.*  Defendants state, however, that the IRS received

neither a FOIA request nor an administrative appeal from plaintiff.  Peterson Decl. ¶¶ 5, 7-8.[8]

---

[7]     Defendants submit the declaration of Leila I. Wassom, a Paralegal Specialist currently assigned to the
DEA's Office of Chief Counsel, Administrative Law Section.  Defs.' Mot., Wassom Decl. ¶ 1.  Among other duties,
Ms. Wassom reviews "for litigation purposes both the initially processed and appealed" FOIA request to the DEA.
*Id.* ¶ 2.  She makes her declaration after having read plaintiff's complaint and the records maintained by the DEA's
Freedom of Information Operations Unit ("SARO"), the office "responsible for responding to, the search for, and the
processing and release of information requested under FOIA."  *Id.* ¶ 5.

[8]     Defendants submit the declaration of Heidi Peterson, an Appeals Officer at the IRS' Riverside, California
Appeals Office.  Defs.' Mot., Peterson Decl. ¶ 1.  The Appeals Office is responsible for processing administrative
appeals of FOIA requests mailed to the IRS after January 15, 2001.  *Id.* ¶ 2.

## II.  DISCUSSION

### A.  Summary Judgment Standard

The Court grants a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact in dispute, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions in the moving party's affidavits may be accepted as true, unless the opposing party submits his own affidavits or documentary evidence that contradict the movant's assertions. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)); LCvR 7(h).

To obtain summary judgment in a FOIA action, an agency must show, viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact with regard to the agency's compliance with the FOIA.  *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  The Court may award summary judgment solely on the information provided in affidavits or declarations when such sworn statements describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information logically withheld falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

### B.  Exhaustion of Administrative Remedies

Plaintiff moves for partial summary judgment in his favor on the issue of exhaustion. While defendants do not oppose the motion in most respects, defendants assert that plaintiff failed to submit a FOIA request to the IRS.  *See* Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment at 1.

A requester of information from the government "may generally seek judicial review of his FOIA request only after he has exhausted all administrative remedies."  *Pollack v. Dep't of Justice*, 49 F.3d 115, 118 (4th Cir. 1995).  Exhaustion is required "so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record in support of its decision."  *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990); *Dettman v. U.S. Dep't of Justice*, 802 F.2d 1472, 1477 (D.C. Cir. 1986).

IRS' Appeals Office received a letter from plaintiff entitled "FOIA APPEAL."  Carrillo Decl. ¶ 3 & Ex.  A (FOIA Appeal).[9]  Staff assigned to the matter searched the IRS' records for the underlying FOIA request in order to prepare a response.  *Id.* ¶ 3.

The Electronic Disclosure Information Management System ("EDIMS") is "a computerized information system for inventory control and casework management of disclosure requests made by the [IRS'] disclosure offices."  Carrillo Decl. ¶ 4.  Two searches of the EDIMS using plaintiff's name as a search term yielded no responsive records.  *Id.* ¶¶ 4-5; Peterson Decl. ¶ 6.  In addition, IRS staff searched the Appeals Centralized Database System ("ACDS"), the Appeals Division's "computerized information system for case receipt, control and processing, using plaintiff's last name as a search term.  Peterson Decl. ¶ 4.  That search yielded no responsive records.  *Id.* ¶ 5.

---

[9]    Defendants submit the declaration of Theresa Carrillo, Appeals Officer, Fresno, California Appeals Office, IRS.  Carrillo Decl. ¶ 1.  Among the office's functions is the processing of administrative appeals of FOIA requests submitted to the IRS by mail.  *Id.* ¶ 2.  Ms. Carillo states that she was assigned the duty of handling plaintiff's purported FOIA appeal, and thus has personal knowledge of the matter.  ¶ 3.

IRS staff also searched the Internal Data Retrieval System ("IDRS").  Peterson Decl. ¶ 7. This system allows IRS staff "access to certain taxpayer information," including Social Security numbers.  *Id.*  The IDRS search identified three Social Security numbers associated with plaintiff's name.  *Id.*  An EDIMS search using these Social Security numbers "again revealed that no FOIA requests have been submitted by, or on behalf of, Mr. Sharbutt."  *Id.*

The parties agree that the IRS responded in writing to plaintiff's purported administrative appeal.  *See* Plaintiff's Motion for Partial Summary Judgment, Ex. 69 (July 25, 2005 letter from M. Field, Appeals Team Manager, Fresno Appeals Office); Carrillo Decl., Ex. 1 (same). Plaintiff fails to establish that he submitted an underlying request that could have been appealed administratively.  The IRS cannot be expected to respond to a FOIA request that it does not receive.  Plaintiff's motion for partial summary judgment will be denied in part for his failure to show exhaustion of administrative remedies with respect to the FOIA request to the IRS.  *See Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1259 (D.C. Cir. 2003) (dismissing FOIA complaint for failure to state a claim upon which relief can be granted because plaintiff did not exhaust administrative remedies by pursuing proper appeal to Justice Department's Office of Information and Privacy).

### C.  Adequacy of Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  An agency is obligated to make a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C.

Cir. 1990) (citing *Weisberg v. U.S. Dep't of Justice*, 745 F.2d at 1485).  An agency may meet its burden by providing an affidavit or declaration which sets forth "the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched."  *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313-14 (D.C. Cir. 2003) (citing *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d at 326).

### 1. Bureau of Alcohol, Tobacco, Firearms and Explosives

The Treasury Enforcement Communications System ("TECS") is maintained by the Bureau of Customs and Border Protection, Department of Homeland Security.  Graham Decl. ¶ 33.  Among other things, TECS is used to locate records in the BATFE's Criminal Investigation Report System of Records, to identify individuals suspected of or involved in violations of federal law, to communicate with other law enforcement agencies, and to access federal databases such as the FBI's National Crime Information Center ("NCIC") and the National Law Enforcement Telecommunication System ("NLETS").  *Id.*  TECS is the BATFE's "comprehensive [] law enforcement database that contains [BATFE's] investigative records."  *Id.*  TECS records include those pertaining to wanted persons and fugitives, known and suspected violators of laws under BATFE's jurisdiction, felons and dishonorably discharged veterans who request permission to possess firearms, violent felons, gangs, and terrorists.  *Id.*

BATFE staff queried TECS using plaintiff's name and date of birth.  Graham Decl. ¶ 34.  This search located a responsive file, Criminal Investigatory file 781065-0046, associated with the Dallas Field Division.  *Id.*  Staff forwarded the file to the Disclosure Division for processing.  *Id.*

The Court concludes that the BATFE's search was conducted in good faith and was reasonable and adequate under the circumstances.

2.  United States Marshals Service

Plaintiff requested that the USMS "[s]earch the Tulsa & Oklahoma City and El Reno, OK districts and Forrest City, AR" for records "in any way connected to, related to, or even remotely in reference to [his] name."  Bordley Decl., Ex. A).  The USMS indeed searched for records at offices where records likely would be located: the Northern, Western, and Eastern Divisions of Oklahoma and the Eastern Division of Arkansas.  *Id.* ¶ 9.  Although the declarant explained where responsive records actually were located, he did not explain what records were searched or how those records were maintained.

Based on the current record, the USMS does not meet its burden to demonstrate the adequacy of its search for records responsive to plaintiff's FOIA request.

3.  Federal Bureau of Investigation

a.  FBI Headquarters

In the Central Records System ("CRS"), the FBI maintains its "administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes."  Hardy Decl. ¶ 20. The records are organized by subject matter, and a file's subject matter may relate to an individual, organization, company, publication, activity, or foreign intelligence matter.  *Id.* General indices, index cards arranged in alphabetical order, are the means by which CRS records are retrieved.  *Id.* ¶ 21.  Entries in the general indices are either "main" entries or "reference" entries.  *Id.*  The former "carry the name corresponding with a subject of a file" in the CRS; the latter "are generally only a mere mention or reference to an individual, organization, etc., contained in a document located in another 'main' file on a different subject matter."  *Id.*  FBI field divisions have access to CRS files by the General Indices, which "are likewise arranged in alphabetical order and consist of an index on various subjects, including the names of individuals

and organizations." *Id.* ¶ 22.  One searches the general indices for a particular subject, "such as

'Jimmy Lee Sharbutt,' [] by searching the subject requested in the index." *Id.*  FBIHQ's search,

however, yields no responsive records. *Id.* ¶ 7.

### b.  Oklahoma City Field Office

Records pertinent to specific FBI field offices are maintained in those offices.  Hardy

Decl. ¶ 20.  A field office uses the FBI's Investigative Case Management System ("ICM") to

open, assign, and close investigative cases, and to set, assign, and track leads. *Id.* ¶ 23(a).  Each

case is assigned a universal case file number. *Id.*  Records responsive to plaintiff's FOIA request

are found in universal case file number 7A-OC-61637: the "'7A' indicates the classification for

the specific type of investigation, which in this case is 'Kidnapping;' 'OC' indicates the Office

of Origin of the investigation, which in this case is the OCFO; and '61637' indicates the

individual case file number for the particular investigation." *Id.*  On remand from OIP, FBI staff

conducted a "search of the OCFO automated indices and located one two-page reference

maintained in file 7A-OC-61637." *Id.*  Hardy Decl. ¶ 25.  This document "consists of an FBI

agent interview of the plaintiff recorded on an FD-302 Form." *Id.* & Ex. O (FD-302 dictated

September 27, 2002).

The FBI's supporting affidavit does not specify the means by which it conducted its

search.  However, given its explanation of the arrangement of the agency's files, FBI staff used

plaintiff's name and other identifying information included in his FOIA request (such as his date

and place of birth and Social Security number).  The Court concludes that this search was

reasonable and adequate under the circumstances.

### 4.  Criminal Division

Criminal Division staff begins a search for records responsive to a FOIA request "by searching [the agency's] centralized records index, JUSTICE/CRF-001 (Central Criminal Division Index File and Associated Records)."  Hsu Decl. ¶ 13.  If this initial search "reflects responsive, or potentially responsive records, a search is sent to the section identified as having custody of the records for such records."  *Id.*  The Criminal Division neither assignes identification numbers to individuals, nor maintains files based on Social Security numbers, nor maintains separate "see references" and "cross-references."  *Id.* ¶ 15 n.1.

In this case, Criminal Division staff searched not only the centralized index, but also six other systems of records specified in plaintiff's FOIA request.  *See* Hsu Decl., Ex. 4.  These searches yielded no responsive records.  *Id.* ¶ 16.  The declarant explains that, because the "great majority of Federal crimes are prosecuted by the local United States Attorney's Office, independently[] of the Criminal Division, [] copies of such records are ordinarily not maintained in the Criminal Division."  *Id.* ¶ 17.

The Court concludes that the Criminal Division's search was reasonable and adequate under the circumstances.  A search using plaintiff's name as a search term did not indicate the existence of responsive records, and there was no cause for further action.

### 5.  Federal Bureau of Prisons

"[T]he majority of the records created by the BOP at facilities where he was previously incarcerated, (i.e., FCI El Reno and FTC Oklahoma City) are routinely forwarded to [an inmate's] unit team for incorporation into his Central File."  Summers Decl. ¶ 6.  Accordingly, the BOP searched the "FOIA Exempt" section of plaintiff's Central File for responsive records. *Id.* ¶¶ 6, 18 & Attach. 3 (May 19, 2005 letter from M.D. Hood, Regional Counsel, South Central Regional Office, BOP).  Plaintiff personally reviewed other portions his Central File and

Medical File, and had an opportunity to request copies of documents in these files.  *Id.*, ¶¶ 7-8 & Attach. 4-5.  He also had an opportunity to request specific records "other than those maintained at his current institution," and he did not make any additional requests.  *Id.* ¶ 6.  The Court concludes that BOP's search was reasonable under the circumstances and was conducted in good faith.

### 6.  Drug Enforcement Administration

The DEA's Investigative Reporting and Filing System ("IRFS") "contains <u>all</u> administrative, general and investigative files compiled by DEA for law enforcement purposes." Wassom Decl. ¶ 15 (emphasis in original).  The Narcotics and Dangerous Drugs Information System ("NADDIS") is the index by which information is retrieved from IRFS.  *Id.* ¶ 16.  An individual is indexed in NADDIS by his name, Social Security number, and date of birth.  *Id.* "As an index, NADDIS points to investigative files and particular DEA Reports of Investigation . . . or other documents . . . that contain information regarding a particular individual or subject of an investigation.  If any DEA criminal investigation records exist that mention the plaintiff, NADDIS will have entries under the plaintiff's name."  *Id.*  Using plaintiff's name, Social Security number and date of birth, DEA staff conducted a NADDIS search; that search yielded no responsive records.  *Id.* ¶ 17.

If plaintiff had been arrested by a DEA agent, this information normally would have been forwarded to the FBI's National Crime Information Center.  Wassom Decl. ¶ 17.  DEA staff searched NCIC, and found no reference to DEA records pertaining to plaintiff.  *Id.*

Subsequent to the filing of the complaint in the instant action, the DEA conducted two additional searches.  DEA staff again searched NADDIS "using an alternate Social Security Number found in the plaintiff's NCIC record."  Wassom Decl. ¶ 17.  Regarding plaintiff's

request for forfeiture records, DEA staff caused a search of the Justice Department's

Consolidated Asset Tracking System. *Id.* ¶ 18. None of these searches yielded responsive

records. *Id.* ¶¶ 17-18.

The Court concludes that DEA's search was reasonable and adequate under the

circumstances and was conducted in good faith.

Plaintiff's objection to the adequacy of the agencies' searches is made in general terms.

He "challenges the scope of their respective searches," Memorandum in Support of Plaintiff's

Opposition to Defendant's Motion for Partial Summary Judgment ("Pl.'s Opp'n") at 2, and

asserts that, "had all defendants actually conducted reasonable searches as required under FOIA

standards, responsive documents would have been located." *Id.* at 3. Plaintiff considers

defendants' "failure to locate the requested records" to be a "failure to due diligence" in

conducting the searches. *Id.* at 3, 4. Plaintiff's general dissatisfaction with the results of the

searches is not dispositive. These searches may not meet plaintiff's expectations. However, "the

adequacy of a FOIA search is generally determined not by the fruits of the search, but by the

appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the*

*Currency*, 315 F.3d at 315; *see Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health & Human*

*Servs.*, 844 F.Supp. 770, 777 n.4 (D.D.C. 1993) (the search, not the results of the search, must be

reasonable).

An agency's search is not presumed unreasonable because it fails to find all relevant

material. *See Steinberg v. U.S. Dep't of Justice*, 23 F.3d at 551 (question is not "whether there

might exist any other documents possibly responsive to the request, but rather whether the search

for those documents was adequate"). Plaintiff's conjecture as to the existence of additional

responsive records does not satisfy his evidentiary burden, which requires that he present

evidence rebutting the agency's initial showing of a good faith search. *See Maynard v. Cent. Intelligence Agency*, 986 F.2d at 560; *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351-52 (D.C. Cir. 1983).

D.  *Exemptions*[10]

1.  Exemption 2

Exemption 2 protects materials that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). It applies to two categories of material: (1) internal agency matters so routine or trivial that they could not be "subject to . . . a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. *Dep't of the Air Force v. Rose*, 425 U.S. 352, 369-70 (1976); *see Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981). Generally, courts limit Exemption 2 protection to "trivial administrative matters of no genuine public interest" ("low 2" exempt information), and to information that, if disclosed, "may risk circumvention of agency regulation" ("high 2" exempt information). *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1206 (D.C. Cir. 1992); *see Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990).

Pursuant to Exemption 2, the BATFE withheld file numbers and other internal administrative codes: internal administrative codes used in a state prison database, in Federal and state criminal law enforcement databases, and in BATFE files such as case summaries, reports of investigation, and crime gun referral forms. Graham Decl. ¶¶ 11-12. Specifically, the BATFE withholds "data displayed on screen prints" of the Treasury Enforcement Communications Systems records. Graham Decl. ¶ 14. The declarant explains that disclosure of information such

---

[10]    Although the declaration supporting the BOP's motion refers to a *Vaughn* Index, there is no index attached. It appears that the record is incomplete, and the Court will not address the BOP's arguments at this time.

as the terminal from which a query was accomplished, its mainframe connection, and the route by which data is transmitted, in the hands of a computer literate person, could expose the system to circumvention. *Id.* Further, disclosure of this information "could facilitate unauthorized access to [BATFE]'s database and interfere with investigations and law enforcement." *Id.* This explanation applies equally to computer codes from other Federal law enforcement computer databases, including NCIC, and databases maintained by the State of Oklahoma. *Id.* ¶ 16.

The BATFE thus demonstrates that its decision to redact these computer codes is proper under Exemption 2 as "high 2" exempt material. *See, e.g., Ferranti v. Bureau of Alcohol, Tobacco & Firearms*, 177 F.Supp.2d 41, 45 (D.D.C. 2001); *Kuffel v. U.S. Bureau of Prisons*, 882 F.Supp. 1116, 1123 (D.D.C. 1995); *Fiumara v. Higgins*, 572 F.Supp. 1093, 1101-02 (D.N.H. 1983).

2. <u>Exemption 3</u>

Exemption 3 protects records that are "specifically exempted from disclosure by statute . . . provided that such statute (A) [requires withholding] in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552 (b)(3). Under Exemption 3, the BATFE withholds in full Firearms Trace Reports wholly derived from the contents of the Firearms Trace System Database referenced in Public Law 108-447. Graham Decl. ¶ 19.

The Consolidated Appropriations Act of 2005, Pub. L. No. 108-447, 118 Stat. 2809, in relevant part provides:

> That no funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms, and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code,

17

> or required to be reported pursuant to paragraphs (3) and (7) of
> such section 923(g), to anyone other than a Federal, State, or local
> law enforcement  agency or a prosecutor solely in connection with
> and for use in a bona fide criminal investigation or prosecution.

*Id.* Through the Consolidated Appropriations Act, Congress expressly prohibits disclosure of

information in the Firearms Trace System Database and information maintained pursuant to 18

U.S.C. § 922(g).  The BATFE properly withholds the Firearms Trace Reports under Exemption

3.  *See Watkins v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 04cv800 (GK), 2005

WL 2334277, *1 (D.D.C. Sept,. 1, 2005) (concluding that 2005 appropriations legislation

"prevent[s] the public release of sensitive firearms trace data not so much for budgetary reasons

than out of concern that such disclosures could jeopardize criminal investigations").

### 3.  Exemption 7

Exemption 7 protects from disclosure "records or information compiled for law

enforcement purposes," but only to the extent that disclosure of such records would cause an

enumerated harm.  5 U.S.C. § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S.

615, 622 (1982).

### a.  Law Enforcement Records

In order to withhold materials properly under Exemption 7, an agency must establish that

the records at issue were compiled for law enforcement purposes.  *See Pratt v. Webster*,  673

F.2d 408, 413 (D.C. Cir. 1982).  In assessing whether records are compiled for law enforcement

purposes, the "focus is on how and under what circumstances the requested files were compiled,

and whether the files sought relate to anything that can fairly be characterized as an enforcement

proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and

internal quotations omitted).

The BATFE and OCFO withheld records under Exemption 7, and each agency

demonstrates that Exemption 7 applies.  The contents of the relevant BATFE Criminal

Investigatory File were "compiled in connection with an investigation into various crimes

including possession of a firearm and possession of a controlled substance."  Graham Decl. ¶ 25.

The responsive OCFO record, an agent interview of plaintiff, was related to the "investigation of

a Kidnapping prosecutable under the Federal Kidnapping Statute."  Hardy Decl. ¶¶ 25, 38.

### b.  Exemption 7(C)[11]

Exemption 7(C) protects from disclosure information in law enforcement records that

"could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5

U.S.C. § 552 (b)(7)(C).  In determining whether this exemption applies to particular material, the

Court must balance the interest in privacy of individuals mentioned in the records against the

public interest in disclosure.  *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).

Individuals have a "strong interest in not being associated unwarrantedly with alleged criminal

activity."  *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984).  "[T]he

only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens'

right to be informed about what their government is up to.'"  *Davis v. U.S. Dep't of Justice*, 968

F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *U.S. Dep't of Justice v. Reporters Comm. for

Freedom of the Press*, 489 U.S. 749, 773 (1989)).

### i.  Names of Federal and State Law Enforcement Agents and Support Personnel

The BATFE withholds "the identities of ATF special agents and other law enforcement

personnel such as supervisory and technical personnel who were involved in law enforcement

---

[11]    The OCFO invokes Exemption 6 in conjunction with Exemption 7(C).  *See* Hardy Decl.
¶¶ 31-35.  Because  the relevant information properly is withheld under Exemption 7(C), the
Court will not address the applicability of Exemption 6.  *See Simon v. Dep't of Justice*, 980 F.2d
782, 785 (D.C. Cir. 1994).

operations." Graham Decl. ¶ 31. Disclosure of their identities "might seriously prejudice their effectiveness in conducting investigations to which they are assigned or subject them to unwarranted harassment." *Id.* The agency concludes that disclosure of information about these individuals "is unlikely to add to the public's understanding of how [BATFE] works or how well it performs its duties," *id.* ¶ 26, and that their privacy interests prevail. *Id.* ¶ 32.

The OCFO withholds the name of an FBI Special Agent "who was responsible for conducting, supervising, and/or maintaining the investigative activities reported in this Kidnapping investigation." Hardy Decl. ¶ 41. The declarant explains that "[p]ublicity, adverse or otherwise, regarding any particular investigation conducted by [Special Agents] may seriously impair their effectiveness in conducting future investigations." *Id.* Protection of their identities is warranted to protect these agents from "unnecessary, unofficial questioning as to the conduct of an investigation," and from potential harm brought on by persons with whom they interacted in the course of their law enforcement activities. *Id.* Their privacy interests outweigh any public interest in disclosure of the agents' identities. *Id.* OCFO adopts this rationale in withholding the name of an Oklahoma Bureau of Narcotics agent who assisted in this interview. *Id.* ¶ 42.

Redaction of the names of federal, state and local law enforcement personnel under similar circumstances routinely is upheld. *See Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980) (finding legitimate interest in preserving the identities of government officials where disclosure could subject them to annoyance or harassment in either their official or private lives); *Pray v. Dep't of Justice*, 902 F. Supp. 1, 3 (D.D.C. 1995) (finding that "animosity or grudges toward special agents" resulting from release of information outweighed any possible benefit from disclosure), *aff'd in relevant part*, 1996 WL 734142 (D.C. Cir. Nov. 20, 1996).

*ii*. Third Parties Mentioned in Law Enforcement Records

The BATFE withholds the names, addresses, telephone numbers, titles, and other identifying information related to "third party individuals and witnesses interviewed by [BATFE] during the course of the investigation." Graham Decl. ¶ 28. Disclosure of their identities "could reasonably be expected to [] embarrass[] and humilate[]" them by association with this criminal investigation and could endanger them. *Id*. ¶ 29. The declarant states that plaintiff "has a well-documented history of harassment and witness intimidation that includes threatening families of law enforcement personnel." *Id.* In addition, the BATFE withholds the names of and identifying information about "third parties who were investigated by [BATFE]." *Id.* ¶ 30. Release of their identities "could reasonably be expected to constitute an unwarranted invasion of [their] privacy, because being associated with [BATFE's] criminal investigation into plaintiff's unlawful actions carries a stigmatizing and negative connotation." *Id.* The privacy interests of these individuals outweighs any public interest in disclosure. *Id.* ¶¶ 29, 30.

The OCFO withholds the names and identifying information about "third party individuals in whom the FBI has an investigatory interest in the context of this Kidnapping investigation." Hardy Decl. ¶ 43. Release of their identities "in the context of a FBI criminal investigation could subject them to harassment or embarrassment, as well as undue public attention." *Id.* Absent any legitimate public interest in releasing their identities, their privacy interest warrants protection. *Id.*

Exemption 7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. at 773-775; *SafeCard Servs., Inc. v. Securities & Exchange Comm'n*, 926 F.2d at 1205-06. The disclosure of the names of private

individuals mentioned in law enforcement files would serve a significant public interest only where "there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity," and that the information sought "is necessary in order to confirm or refute that evidence." *Davis v. U.S. Dep't of Justice*, 968 F.2d at 1282. Plaintiff demonstrates no such public interest with respect to the law enforcement personnel or the third parties mentioned in responsive records.

Case law amply supports the BATFE and OCFO positions. *See, e.g., Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 552 (6th Cir. 2000) (concluding that agency properly withheld "identifying information on agents, personnel, and third parties after balancing the privacy interests against public disclosure), *cert. denied*, 534 U.S. 1134 (2002); *SafeCard Servs, Inc. v. Securites & Exchange Comm'n*, 926 F.2d at 1206 (holding that "names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) [are] exempt from disclosure").

### E. Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999). The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

Having reviewed the declarations submitted on behalf of the BATFE and OCFO, the Court concludes that all reasonably segregable information has been released. These agencies only have withheld information properly protected under Exemptions 2, 3, and 7(C). The Court defers its segregability finding, however, with respect to the disclosures made by the USMS and the BOP.

Accordingly, it is hereby

ORDERED that plaintiff's motion for partial summary judgment on exhaustion of administrative remedies [Dkt. #17] is GRANTED IN PART and DENIED IN PART. Defendants concede exhaustion with respect to all FOIA requests to the Bureau of Alcohol, Tobacco, Firearms and Explosives, the United States Marshals Service, the Justice Department's Criminal Division, the Federal Bureau of Investigation (Headquarters and Oklahoma City Field Office), the Federal Bureau of Prisons and the Drug Enforcement Administration. The motion is denied in part for plaintiff's failure to establish that he exhausted his administrative remedies with respect to his FOIA request to the Internal Revenue Service. It is further

ORDERED that the defendants' motion for partial summary judgment [Dkt. #23] is GRANTED IN PART and DENIED IN PART. The Bureau of Alcohol, Tobacco, Firearms and Explosives, the Justice Department's Criminal Division, the Federal Bureau of Investigation (Headquarters and Oklahoma City Field Office), the Federal Bureau of Prisons and the Drug Enforcement Administration conducted reasonable and adequate searches for records responsive to plaintiff's FOIA requests. The Bureau of Alcohol, Tobacco, Firearms and Explosives and FBI's Oklahoma City Field Office properly withheld information under Exemptions 2, 3, and 7(C), and released all reasonably segregable material. In all other respects, the motion is denied

without prejudice.  The United States Marshals Service did not establish that its search for records was reasonable and adequate under the circumstances.  The Court did not reach the merits of the Marshals Service's and Federal Bureau of Prisons' decisions to withhold information under Exemption 7.  It is further

ORDERED that defendants' motion for partial summary judgment with respect to plaintiff's FOIA request to the Executive Office for United States Attorneys [Dkt. # 26] is GRANTED as conceded.  It is further

ORDERED that defendants shall file a renewed summary judgment motion within 45 days of entry of this Order.

SO ORDERED.


DATE: September 29, 2006                         JOHN GARRETT PENN
                                                 United States District Judge